FILED        ENTERED
LODGED        RECEIVED

OCT 1 - 2004

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                     DEPUTY

03-CV-01265-ORD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHASE JARVIS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> K2 INC., a Delaware Corporation, and K-2 CORPORATION, an Indiana Corporation d/b/a K2 Sports, <br><br> Defendants. | No. C03-1265Z <br><br> ORDER |

This case comes before the Court on Defendants' Motion to Dismiss for Failure to State a Claim, docket no. 64, and Plaintiffs' Motion for Partial Summary Judgment, docket no. 65. The Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss for Failure to State a Claim, docket no. 64, and GRANTS in part and DENIES in part Plaintiffs' Motion for Partial Summary Judgment, docket no. 65.

## BACKGROUND

### Procedural Background

The Court considers this motion after a somewhat unusual procedural history. Originally, Chase Jarvis and Chase Jarvis, Inc. ("Plaintiffs") filed their claims and Motion for Summary Judgment solely against K2 Inc., a Delaware Corporation. Am. Compl., docket no. 21, at 1; Pls.' Mot. Summ. Judg., docket no. 65, at 2. At oral argument on Plaintiffs' first

ORDER 1–

1  motion for partial summary judgment, docket no. 35, K2 Inc. argued for the first time that

2  Plaintiffs' had sued the wrong corporation; instead of K2 Inc., Plaintiffs should have sued its

3  subsidiary, K-2 Corporation ("K2 Corp."). See Transcript, docket no. 62, at 21-24. The

4  Court denied the motion for partial summary judgment without prejudice and allowed

5  Plaintiffs to re-file to name the correct parties. Id. at 24. Plaintiffs filed a Second Amended

6  Complaint, naming as defendants both K2 Inc. and K2 Corp., an Indiana corporation doing

7  business as K2 Sports (together "Defendants"). Second Am. Compl., docket no. 60, ¶¶ 3-5.

8  According to the Second Amended Complaint, K2 Corp. is a wholly owned subsidiary of K2

9  Inc. See id. at ¶ 11. Plaintiffs assert claims of copyright infringement against K2 Inc. and

10  K2 Corp., contributory infringement against K2 Corp. and K2 Inc., and vicarious

11  infringement against K2 Inc., id. at ¶¶ 20, 32-34, violation of 15 U.S.C. § 1125(a) against K2

12  Inc. and K2 Corp., id. at ¶¶ 38-39, violation of the Washington Consumer Protection Act

13  against K2 Inc. and K2 Corp., id. at ¶¶ 42-45, accounting against K2 Inc. and K2 Corp., id.

14  at ¶¶ 47-49, breach of contract against K2 Inc. and K2 Corp., id. at ¶¶ 51-53, and conversion

15  against K2 Inc. and K2 Corp., id. at ¶¶ 56-60. Plaintiffs make several factual assertions in

16  their complaint regarding K-2 Sports "and/or" K2 Inc., and refer to the two entities jointly as

17  "K2" in several places. See Second. Am. Compl. at ¶¶ 5, 12-13, 20-21, 29.

18       Defendant K2 Inc. moves to dismiss all claims against it under Fed. R. Civ. P.

19  12(b)(6) for failure to state a claim on which relief can be granted. Defendant K2 Corp.

20  moves to dismiss Plaintiffs' Lanham Act, 15 U.S.C. § 1125(a), claim and the Washington

21  Consumer Protection Act, Wash. Rev. Code § 19.86, claim for failure to state a claim on

22  which relief can be granted. Defs.' Mot. Dismiss, docket no. 64, at 1.

23       Plaintiffs move for summary judgment against Defendant K2 Corp. alone, claiming

24  that K2 Corp. (1) directly infringed Plaintiffs' copyright in photographic images by using

25  Plaintiffs' images outside the scope of K2 Corp.'s license and after the expiration of K2

26  Corp.'s license, (2) contributorily infringed Plaintiffs' copyright by knowingly contributing

ORDER  2–

1   to third-party infringement, (3) breached the 2000 and 2001 Agreements as informed by the

2   Delivery Memoranda by failing to include proper photo credit and copyright notice in its

3   displays of Plaintiffs' images, by failing to negotiate with Plaintiffs for an expanded license

4   before permitting third-party use, and by failing to return 835 original photographic slides to

5   Plaintiffs, and (4) committed a common law conversion of Plaintiffs' 835 original slides by

6   failing to return them to Plaintiffs upon request. Pls.' Mot. Summ. Judg.

7           **The Parties and the Agreements**

8           Plaintiff Chase Jarvis is a professional photographer who works primarily in the

9   outdoor sports and active lifestyle industry. Jarvis Decl. I, docket no. 36, ¶ 3. Mr. Jarvis is

10  the founder and owner of Plaintiff Chase Jarvis, Inc. (formerly known as Chase Jarvis Visual

11  Media). Id. ¶ 2. K2 Corp., a wholly-owned subsidiary of K2 Inc., sells sports equipment and

12  uses images in the marketing of that equipment. Id., Ex. A at I.B, Ex. B at I.B. Jarvis and

13  K2 Corp. entered into two agreements allowing K2 Corp. to use Jarvis' images in K2 Corp.

14  marketing materials for specified periods. The first agreement was entered into on October

15  6, 2000 (the "2000 Agreement") and allowed K2 Corp. to make certain uses of Jarvis'

16  photographic images during the 2001-2002 ski year or one year from delivery date of that

17  film, whichever was shorter. Id. ¶ 5, Ex. A at II, III.A. The second was entered into on

18  December 13, 2001 (the "2001 Agreement") and allowed K2 Corp. to make certain uses of

19  Jarvis' photographic images during the 2002-2003 ski season ending May 2003. Id. ¶ 6, Ex.

20  B at II, III.A. Both the 2000 and 2001 Agreements state that they "shall be construed in

21  accordance with the laws of the State of Washington..." Id. ¶¶ 5-6, Ex. A at IX, Ex. B at IX.

22          **Copyright Ownership**

23          In May and September 2003, Plaintiffs obtained copyright registrations for the

24  photographic images previously provided to K2 Corp. under the 2000 and 2001 Agreements.

25  Id. ¶¶ 8-9, Exs. D and E. Both the 2000 and 2001 Agreements provide that "[t]he copyright

26  to all images created or supplied pursuant to this agreement remains the sole and exclusive

ORDER  3–

1   property of the photographer" and that "[t]here is no assignment of copyright, agreement to

2   do work for hire, or intention of joint copyright expressed or implied hereunder." Id., Ex. A

3   at IV, Ex. B at IV. Defendants do not assert that they own a copyright in any of the images

4   produced or supplied under the 2000 or 2001 Agreements.

5   **Scope of K2 Corp.'s Rights and Obligations Under Agreements and Delivery Memoranda**

6   

7   Both the 2000 and 2001 Agreements granted K2 Corp. "the non-exclusive ability to

8   publish images[1]...in [K2 Corp.'s] own brochures, print advertisements, trade show display

9   books, posters, and electronically for the web so as to market their business..." Id., Ex. A at

10  II.C.i., Ex. B at II.C.i. The 2000 Agreement states that "[e]xternal use of [Plaintiffs'] images

11  will be negotiated with [Plaintiffs] prior to their use." Id., Ex. A at II.C.i. The 2001

12  Agreement states that "[e]xternal use of [Plaintiffs'] images by K2 for K2 marketing partners

13  and other related promotions falls outside the scope of this agreement and must be negotiated

14  with [Plaintiffs] prior to any use." Id., Ex. B at II.C.ii.

15  Both Agreements also require that K2 Corp. include a photo credit and copyright

16  notice with all uses of Plaintiffs' images. The Agreements specifically state that a "[p]hoto

17  credit to read 'Photo: Chase Jarvis' or its equivalent with copyright notice, is required on all

18  uses, print, web, and otherwise," that "all images pursuant to this Agreement, without

19  exception, require photo credit and copyright to Chase Jarvis," and that "[o]mission of photo

20  credits will be considered...a breech [sic] of contract." Jarvis Decl. I, Ex. A at II.C, Ex. B at

21  II.C. Plaintiffs also sent delivery memoranda along with deliveries of their original

22  photographic slides to K2 Corp. ("Delivery Memoranda") stating that copyright notice and a

23  photo credit to Chase Jarvis were required for use. Id. ¶ 7, Ex. C at 22-35.

24  

25  [1]"Images" are defined in both Agreements as "all viewable renditions furnished by Chase Jarvis hereunder." Jarvis Decl. I, Ex. A at II.E.i, Ex. B at II.E.i. However, the 2001

26  Agreement restricts usage rights to "images created on the scheduled shooting days." Id., Ex. B at II.C.i.

ORDER  4–

1

## Expiration of Image Usage Rights

2   The 2000 Agreement provides that photo usage rights conferred thereunder expired at

3 the end of "the 2001-2002 ski year or one year from delivery date of that film, whichever is

4 shorter." Jarvis Decl. I, Ex. A at III.A. The 2001 Agreement provides that photo usage

5 rights conferred thereunder expired at the conclusion of "the 2002-2003 ski season, ending

6 May 2003." Id., Ex. B at III.A. Defendants concede that the agreements have expired. See

7 Def.'s Resp. S. J., docket no. 72, at 2.

8

## Ownership of Original Photographic Slides and Duty to Return Slides to Plaintiffs

9

10   Both Agreements state that Mr. Jarvis owns the photographs he produced, Jarvis Decl.

  I, Ex. A at I.A, Ex. B at I.A, though neither Agreement expressly states that K2 Corp. must

11

  return the original slides to Plaintiffs or sets a time frame for such returns. See generally id.,

12

  Exs. A and B. Both Agreements also incorporate industry standards. Id., Ex. A at II.E.vii,

13

  Ex. B at II.E.v. K2 Corp.'s Senior Vice President admits that returning images to the

14

  photographer is industry custom. Shelley Decl., docket no. 66, ¶ 4, Ex. C (Petrick Dep. at

15

  53:lns 1-15). The Delivery Memoranda sent to K2 Corp. along with deliveries of original

16

  photographic slides stated that "[l]oss or damage of any image will result in an $1500 fee per

17

  image, as set forth by industry standards," that "[i]f any delivery differs in any way from

18

  what is claimed herein, the client must notify Chase Jarvis or his assigns within 48 hours of

19

  receipt," and that "acceptance of this delivery constitutes [K2 Corp.'s] acceptance of all

20

  terms and conditions herein." See id. ¶ 7, Ex. C. K2 Corp. never rejected delivery of

21

  Plaintiffs' images or claimed that the number of images delivered differed from that stated on

22

  the Delivery Memoranda. Id. ¶ 28. However, both the 2000 and 2001 Agreements contained

23

  integration clauses stating, "This Agreement constitutes the entire agreement of the parties as

24

  to the subject matter hereof. This Agreement may only be modified in writing signed by the

25

  parties hereto." Id., Ex. A at XII, Ex. B at XII. Plaintiffs do not claim that K2 Corp. signed

26

ORDER  5–

1 | the Delivery Memoranda or any other written agreement modifying the 2000 Agreement or

2 | the 2001 Agreement.

3 | ### K2 Corp.'s Use of Plaintiffs' Slides and Images

4 | In the course of carrying out the 2000 and 2001 Agreements, Plaintiffs delivered at

5 | least 3,030 original photographic slides to K2 Corp.  Jarvis Decl. I ¶¶ 11, 26-27, Ex. L at

6 | 165; Jarvis Decl. II, docket no. 70, ¶¶ 4-6; Jarvis Decl. IV, docket no. 78, ¶ 8, Exs. C-D.

7 | Plaintiffs have asked K2 Corp. to return these original slides, Jarvis Decl. I, ¶ 29, Exs. M

8 | and N at 167-77, but K2 Corp. has not returned 835 (eight-hundred thirty-five) of these

9 | slides.  Jarvis Decl. I ¶ 27; Jarvis Decl. III, docket no. 70, ¶¶ 3-6.[2]  K2 Corp. disputes the

10 | accuracy of this number, but has no records of its own to contradict it.  K2 Corp. used

11 | several of Plaintiffs' images on its online web sites after its rights to use such images expired

12 | under the express terms of the 2000 and 2001 Agreements.  Jarvis Decl. I, ¶¶ 16-17, Ex. I at

13 | 63-65, 67-69, Ex. J at 76-93, 100-121.  K2 Corp. also reproduced Plaintiffs' images on

14 | vehicles after the expiration of both license agreements.  Id., Ex. I at 70, Ex. J at 122-29.

15 | Many of the images used in K2 Corp.'s online and print advertising include no photo credit,

16 | or mis-credit another photographer or entity as the source of the image.  Id., Exs. I and J.  K2

17 | Corp. used one of Plaintiffs' images in the creation of an advertisement template with an

18 | open space labeled "Dealer imprint here," id. ¶ 23, Ex. K at 162, and Plaintiffs' images were

19 | used in two print advertisements featuring the name and contact information of third-party

20 | dealers, one of which apparently displayed the same image used in K2 Corp.'s "Dealer

21 | imprint" template.  Id. ¶¶ 16-17, 23, Ex. J at 130-34, Ex. K at 162.  Images from the slides

22 |

23 | [2] After the June 30, 2004 oral argument, Plaintiff Jarvis revisited his records and discovered

24 | an additional 439 missing slides. Jarvis Decl. III at ¶ 2-3.  Mr. Jarvis realized that he had included as returned 439 slides which had never been recorded in his spreadsheet as

25 | delivered because they were delivered by the subsidiary corporation Benchmark 10.  Id. at ¶3-4.  As a result, when these additional 439 slides are added to the number of delivered

26 | slides, the number of unreturned slides rises to 835.  Id. at ¶ 6. K2 Corp. argues that the discrepancy evidences potential inaccuracies in Mr. Jarvis' accounting methodology.

ORDER  6–

1 | Plaintiffs delivered to K2 Corp. have also been used in print and online editorials featuring
2 | K2 Corp. products written by four different third-party sources, sometimes with photo credit
3 | given to K2 Corp. Id. ¶¶ 24-25, Ex. J at 145-153. K2 Corp. employees acknowledge that
4 | Jarvis images were likely made available to the press electronically. Shelley Decl. ¶¶ 4-6,
5 | Ex. C (Petrick Dep. at 114:ln 17-115:ln 22), Ex. E (Fuller Dep. at 54:lns. 21-22). Finally,
6 | K2 Corp. also made the images available to some of its wholly owned subsidiaries, including
7 | K2 Japan. Jarvis Decl. I, Ex. J at 108-119; Shelley Decl., Ex. E (Fuller Dep. at 47:lns 6-22).
8 | These subsidiaries are separate entities, distinct from K2 Corp. Shelley Decl., Exs. A-C
9 | (Petrick Dep. at 24:16-23; 26:4-28:6).

10 |                                    **DISCUSSION**
11 |     **I.    Defendants' 12(b)(6) Motion to Dismiss**

12 |         A complaint "should not be dismissed unless it appears beyond doubt that plaintiff
13 | can prove no set of facts in support of his claim which would entitle him to relief." Van
14 | Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted);
15 | see also Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (issue is not
16 | whether plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to
17 | support the claim). Dismissal is proper if the complaint "lacks a cognizable legal theory or
18 | the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica
19 | Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). In deciding a motion to dismiss, the Court
20 | accepts as true all material factual allegations in the complaint and construes them in the
21 | light most favorable to the plaintiff. See Newman v. Sathyavaglswaran, 287 F.3d 786, 788
22 | (9th Cir. 2002). However, the Court need not accept legal conclusions as true just because
23 | they are cast as factual assertions. Western Mining Council v. Watt, 643 F.2d 618, 624
24 | (1981).

25 |
26 |

ORDER  7–

1      1.      **Plaintiffs' Copyright Infringement Claims**

2             a.      **Plaintiffs' Direct Copyright Infringement Claim Against K2 Inc.**

3      Defendants contend that Plaintiffs have failed to state a claim against K2 Inc. for

4   direct copyright infringement.  In order to state a claim of direct copyright infringement

5   against K2 Inc., Plaintiffs must assert facts that show or from which it can be reasonably

6   inferred that (1) Plaintiffs own valid copyrights, and (2) that K2 Inc. violated at least one of

7   Plaintiffs' exclusive rights in the copyrighted works granted by the Copyright Act.  See

8   A&M Records v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001).  A copyright holder has

9   the exclusive right to copy, display, and distribute his copyrighted works. 17 U.S.C. § 106.

10  Plaintiffs allege that K2 Inc. copied, displayed, distributed, and "used" Plaintiffs' images,

11  and made images available to others, outside the scope of any authorization.  Second Am.

12  Compl. at ¶¶ 18, 20, 32.  Defendants argue that Plaintiffs' direct infringement claim relies on

13  conclusory statements and factual assertions that are too vague to be accepted.  Defs.' Mot.

14  Dismiss at 4.  Defendants highlight the fact that all of Plaintiffs' specific factual assertions

15  regarding use of Plaintiffs' images deal with K2 Corp.'s use of the images.  The Court need

16  not accept legal conclusions cast as factual assertions.  Watt, 643 F.2d at 624.  Thus, the

17  Court does not accept Plaintiffs' allegations that K2 Inc. "infringed" Plaintiffs' copyright and

18  that K2 Inc. had "no rights to" use Plaintiffs' images.  However, the Court does accept

19  Plaintiffs' factual assertions that K2 Inc. copied, displayed, and distributed Plaintiffs'

20  copyrighted images outside the scope of any authorization.  These factual assertions are

21  sufficient to state a legal claim of direct copyright infringement against K2 Inc.

22            b.      **Plaintiffs' Contributory Infringement Claim Against K2 Inc.**

23     To state a claim for contributory copyright infringement against K2 Inc., Plaintiffs

24  must allege facts that show, or from which it can be reasonably inferred, that K2 Inc., "with

25  knowledge of the infringing activity, induces, causes or materially contributes to the

26  infringing conduct of another."  See Napster, 239 F.3d at 1013.  Second Am. Compl. at ¶ 14.

ORDER  8–

1   Plaintiffs state that K2 Inc. "contributorily infringed " Plaintiffs' copyright and that "K2" has

2   made Plaintiffs' photos available to their subsidiaries.  Id. at ¶¶ 20-21.  The Plaintiffs argue

3   in their Response that because the Plaintiffs allege that K2 Inc. made the images available,

4   they have alleged enough facts to prove contributory infringement.  However, Plaintiffs do

5   not allege any facts that, if proven, would demonstrate that K2 Inc. had knowledge of the

6   infringing activity, which is a necessary element of the claim.  Based on the record of the

7   case, which may be considered on a motion to dismiss, Emrich v. Touche Ross, Co., 846

8   F.2d 1190, 1198 (9th Cir. 1988) (noting that on a motion to dismiss the court may properly

9   look beyond the complaint to documents in the public record), K2 Inc. is not a party to the

10  contract as Plaintiffs admitted in oral argument.  Transcript 22, lns. 5-7.  The Plaintiffs do

11  not allege any other basis upon which K2 Inc. knew or should have known that the third

12  parties' use was infringing.  Therefore, Plaintiffs do not state a claim of contributory

13  infringement against K2 Inc.

14          c.      **Plaintiffs' Vicarious Infringement Claim Against K2 Inc.**

15          To state a claim for vicarious copyright infringement against K2 Inc., Plaintiffs must

16  allege facts that show or from which it could reasonably be inferred that K2 Inc. had the

17  right and ability to supervise infringing activity and a direct financial interest in the

18  infringing activity.  See Napster, 239 F.3d at 1022.  Defendants argue that simply alleging a

19  parent-subsidiary relationship (even a wholly-owned subsidiary) is insufficient to state a

20  claim for vicarious infringement.  Defendant relies on Frank Music Corp. v. Metro-

21  Goldwyn-Mayer, Inc. ("Frank Music I"), which states that a parent company can only be

22  held liable for infringement by its subsidiary if there is "a substantial and continuing

23  connection between the two with respect to the infringing acts."  772 F.2d 505, 519-20 (9th

24  Cir. 1985) (citing Melville B. Nimmer & David Nimmer, 3 Nimmer on Copyrights §

25  12.04[A], at 12-44 to -45).  In Frank Music Corp. v. Metro-Goldwin-Mayer, Inc., 886 F.2d

26  1545, 1553 (9th Cir. 1989), ("Frank Music II") the Ninth Circuit reversed the district court's

ORDER  9–

1    determination that MGM, Inc., the parent corporation to MGM Grand, did not have a

2    "substantial and continuing relationship" with MGM Grand because the district court failed

3    to consider: (1) that MGM Grand was a wholly owned subsidiary of MGM, Inc.; (2) that

4    MGM, Inc.'s attorneys responded to the inquiries about MGM Grand's infringement; (3) that

5    the employee directly responsible for the infringement, Donn Arden, had his office at MGM,

6    Inc.; (4) that MGM, Inc. benefitted directly from the infringement as it promoted MGM,

7    Inc's well-known lion symbol, (5) that the infringing material was inspired by MGM Inc.'s

8    use of the same material, (6) that Donn Arden actively consulted with personnel from MGM

9    Inc. when preparing the infringing show, (7) that MGM, Inc. made the material available to

10   Donn Arden, and (8) that Donn Arden got clearances to use the material from MGM, Inc.

11   Defendants also cite to Goes Lithography Co. v. Banta Corp., which holds that pleading a

12   parent/subsidiary relationship is insufficient to give rise to a reasonable inference of a right

13   and ability to supervise the infringing activity and direct financial interest. 26 F. Supp. 2d

14   1042, 1045 (N.D. Ill. 1998).

15        Plaintiffs argue that Frank Music Corp. I and Frank Music Corp. II are inapplicable

16   because they are not decisions on a 12(b)(6) motion to dismiss, but an appellate decision

17   after a bench trial on the merits and a remand, respectively.  It is irrelevant at what stage of

18   the proceedings these decisions were rendered because they delineate the elements required

19   to state a claim for vicarious infringement.  Plaintiffs further argue that Frank Music Corp. II

20   stands for the proposition that alleging that the subsidiary is wholly owned and that the

21   parent corporation's attorneys responded to the allegations is enough to allege a substantial

22   and continuing relationship for purposes of vicarious infringement.  As noted above, this is

23   not what Frank Music Corp. II stands for, but instead is a very fact-intensive case that holds

24   when there are a significant number of factors connecting the parent corporation to the

25   subsidiary, a substantial and continuing connection probably exists.  886 F.2d at 1553.

26   Finally, Plaintiffs argue that Goes Lithography is distinguishable because the plaintiff in that

ORDER  10−

1 case only alleged that the subsidiary was wholly owned, while in this case the Plaintiffs

2 allege that K2 Corp. is a wholly owned subsidiary of K2 Inc. and that K2 Inc. "benefitted"

3 from the infringements.  See Goes Lithography, 26 F. Supp. 2d at 1045; Second Am. Compl.

4 at ¶¶ 11, 34.  This extra, entirely conclusory allegation is not enough.  Given the requirement

5 of a "substantial and continuing connection" between a subsidiary and a parent corporation,

6 these two allegations are, as a matter of law, insufficient to plead vicarious infringement.

7      **2.    Plaintiffs' Lanham Act Claim Against K2 Inc. and K2 Corp.**

8      In order to state a claim for false designation of origin under § 43(a) of the Lanham

9 Act, 15 U.S.C. § 1125(a), against both Defendants, Plaintiffs must allege facts that show or

10 from which a reasonable juror could infer that Defendants used a word, symbol, or

11 designation in connection with goods or services in interstate commerce that is likely to

12 cause confusion, mistake, or deception as to the affiliation, connection, or association of

13 Plaintiffs with another person or entity as to origin, sponsorship, or approval of Plaintiffs'

14 goods or services.  See 15 U.S.C. § 1125(a).  Defendants argue that Plaintiffs fail to allege

15 that K2 Inc. even used Plaintiffs' photographs, except for a conclusory allegation that

16 "Defendants K2 have used false designations of origin, false or misleading descriptions of

17 fact or false or misleading representations of fact..."  See Second Am. Compl. at ¶ 38.  The

18 language used in this sentence is merely a legal conclusion presented as a factual assertion.

19 However, Plaintiffs specifically allege that both K2 Inc. and K2 Corp. "credited certain

20 Chase Jarvis photographs to others and contributed to misattribution by third parties" and

21 "that even after notice... K-2 Corporation and K2 Inc. have failed and refused to correct the

22 credits..." Id. at ¶¶ 24-25.  Further, Plaintiffs allege Defendants have "passed off Plaintiff's

23 work as Defendants' own or as the works of third parties."  Id. at ¶ 38.  This factual

24 allegation, if true, is enough that a reasonable juror could find that K2 Inc. and K2 Corp., by

25 miscrediting a Chase Jarvis photograph to someone other than Chase Jarvis, used a

26 designation in connection with a good that is likely to cause confusion as to the origin of the

ORDER  11–

1  photograph. This is not simply *failure* to credit Jarvis as the author, but giving false credit to
2  another. Thus, Plaintiffs have stated a claim of false designation of origin under the Lanham
3  Act § 43(a), 15 U.S.C. § 1125(a) against both K2 Inc. and K2 Corp.

4          3.      **Plaintiffs' Washington Consumer Protection Act Claim Against K2 Inc.**
5                  **and K2 Corp.**

6          To state a private claim against Defendants for violation of the Washington Consumer
7  Protection Act (the "WCPA"), Plaintiffs must allege facts that show or from which a
8  reasonable juror could infer that Defendants (1) engaged in an unfair or deceptive act or
9  practice; (2) which occurs in trade or commerce; (3) that impacts the public interest; (4)
10 which causes injury to the plaintiff in his or her business or property; and (5) which injury is
11 causally linked to the unfair or deceptive act. Wash. Rev. Code. § 19.86.090; Keenan v.
12 Allan, 889 F. Supp 1320, 1383 (E.D. Wa. 1995). Defendants argue first that Plaintiffs have
13 not alleged that Defendants engaged in any act that could possibly satisfy these elements.
14 Also, Defendants argue that, if Plaintiffs are relying on alleged acts of copyright
15 infringement or contractual breaches, that these acts do not satisfy the WCPA as a matter of
16 law, because they do not adequately affect the public interest. However, "[u]nfair methods
17 of competition and unfair or deceptive acts or practices in the conduct of any trade or
18 commerce" do violate the WCPA. Wash. Rev. Code § 19.86.20. Thus, if Defendants'
19 alleged false designation of origin on Plaintiffs' photographs meets the definition of "[u]nfair
20 methods of competition [or] unfair or deceptive acts or practices in the conduct of any trade
21 or commerce," and sufficiently affect the public interest, then Plaintiffs will have stated a
22 claim under the WCPA. Id. Yet, for the alleged false designation of authorship to be an
23 unfair method or deceptive act or practice under Wash. Rev. Code § 19.86.20, it must be
24 capable of deceiving a substantial portion of the public. See Sing v. John L. Scott, Inc., 134
25 Wash. 2d 24, 30 (1997). Simply alleging that K2 Inc. and K2 Corp. miscredited some
26 photographs to other photographers does not give rise to the reasonable inference that the

ORDER  12–

1 │ acts of Defendants were capable of deceiving a substantial portion of the public.  Plaintiffs

2 │ list a series of "hypothetical facts" in their Response, arguing that these hypothetical facts

3 │ demonstrate the potential for deceiving the public interest.  Pls.' Resp., docket no. 71, p. 12.

4 │ However, only one of these hypothetical facts (which may or may not result in a harm to the

5 │ public interest) is actually pled in the complaint: that Defendants do not have an adequate

6 │ system for insuring credit to photographers.  Second Am. Compl. at ¶ 24 (K2 Corp. and K2

7 │ Inc., "fail to employ adequate safeguards and practices to ensure proper credit.").  Plaintiffs

8 │ argue that the Court should infer from this allegation that the Defendant's failure to employ

9 │ adequate safeguards and practices has the capability of deceiving a substantial portion of the

10 │ public.   In order to make this inference, based on the Plaintiffs' set of hypothetical facts, the

11 │ Court would have to infer that the Defendants could have injured more photographers than

12 │ just Plaintiff Jarvis through the lack of adequate safeguards *and* that these photographers

13 │ constitute a substantial portion of the public.  See Pls.' Resp. at p. 12.  The Court declines to

14 │ make these inferences.  Therefore, the Plaintiffs have failed to state a claim for violation of

15 │ the WCPA against either K2 Inc. or K2 Corp.

16 │    **4.    Plaintiffs' Claim for an Accounting Against K2 Inc.**

17 │          In order to state a cause of action for an accounting against K2 Inc., Plaintiffs must

18 │ "show by specific averments that there is a fiduciary relation existing between the parties, or

19 │ that the account is so complicated that it cannot conveniently be taken in an action at law."

20 │ State v. Taylor, 58 Wash. 2d 252, 262 (citing Seattle Nat'l Bank v. School Dist. No. 40, 20

21 │ Wash. 368, 372 (1898)).  Defendants argue that Plaintiffs have made no specific allegations

22 │ of a fiduciary relationship between K2 Inc. and Plaintiffs.  In response, Plaintiffs note that

23 │ they have stated "delivery over the course of several years of thousands of slides."  Pls.'

24 │ Resp. at 13.  However, as Defendants observe, these slides were delivered to K2 Corp., not

25 │ K2 Inc.  Plaintiffs cite no facts that establish a fiduciary relationship between K2 Inc. and

26 │ Plaintiffs.  Therefore, Plaintiffs fail to state a claim for accounting against K2 Inc.

ORDER  13–

### 5. Plaintiffs' Claim for Breach of Contract Against K2 Inc.

An enforceable contract is a necessary prerequisite to a breach of contract claim, Richardson v. Taylor Land & Livestock Co., 25 Wash. 2d 518, 532 (1946).  The issue here is whether K2 Inc. is a party to the contract.  Defendants argue that based on the record of the case K2 Inc. is not a party to the contract as Plaintiffs admitted in oral argument.  See Emrich, F.2d at 1198.  At oral argument, Plaintiffs admitted that K2 Inc. was not the signatory to the agreements at issue.  Transcript at 22, lns. 5-7.  Plaintiffs counter that the party named in the written contract, K2 Sports, a Washington Corporation, does not exist and thus the issue of who is a party to the contract is one to be determined at trial.  However, Plaintiffs admit that K2 Sports is K2 Corp., d/b/a K2 Sports.  Second Am. Comp. at ¶ 5. Plaintiffs state in the complaint that the relationship between Plaintiffs and Defendants was "delineated by written agreements... between Plaintiff Chase Jarvis and K-2 Corporation d/b/a K2 Sports."  Id. at ¶ 14.  Plaintiffs do not make any factual allegations in their complaint that K2 Inc. was a signatory to a contract with Plaintiffs.

Additionally, Plaintiffs make no factual allegations which would support an action for disregarding K2 Corp.'s corporate entity and holding the parent corporation to the contract. Such an action requires Plaintiffs to show that K2 Inc. had an overt intention to disregard or manipulate the corporate entity in order to avoid the obligations of the contract.  Minton v. Ralston Purina Co., 146 Wash. 2d 385, 398 (2002).  Plaintiffs present no factual allegations that would prove any of these elements.  Therefore, Plaintiffs have not stated a claim for breach of contract against K2 Inc.

### 6. Plaintiffs' Claim for Conversion Against K2 Inc.

"The tort of conversion is 'the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it.'" Consulting Overseas Mgmt., Ltd. v. Shtikel, 105 Wash. App. 80, 83 (2001) (quoting

ORDER  14–

1   <u>Washington St. Bank v. Medalia Healthcare L.L.C.</u>, 96 Wash. App. 547, 554 (1997)).

2   Plaintiffs allege in their complaint that Plaintiffs delivered thousands of photographic images

3   to K2 Corp. and that K2 Corp. or its agents, designees or assignees possessed these images.

4   Second Am. Compl. at ¶¶ 28, 56.  Although Plaintiffs claim that "K2" (which encompasses

5   both K2 Inc. and K2 Corp.) failed to return the images, Plaintiffs never allege that K2 Inc.

6   had possession of the images.  <u>Id.</u> ¶ 58.  In order to willfully interfere with a chattel, one

7   must have possession of that chattel.  Therefore, Plaintiffs have not stated a claim for

8   conversion against K2 Inc.

9        **II.     Plaintiffs' Motion for Partial Summary Judgment**

10          The Plaintiffs incorporate their original motion for partial summary judgment ("First

11   Motion for Partial Summary Judgment"), docket no. 35, into the pending motion for partial

12   summary judgment ("Second Motion for Partial Summary Judgment"), docket no. 65, and

13   ask the Court to direct the arguments in the first motion against K2 Corp. instead of K2 Inc.

14   The motion for partial summary judgment is directed solely against K2 Corp, referred to

15   herein as "Defendant" or "K2 Corp."  The Second Motion for Summary Judgment includes a

16   few additional arguments which are addressed below.  Plaintiffs move for summary

17   judgment, claiming that K2 Corp. has (1) directly infringed Plaintiffs' copyright in

18   photographic images by using Plaintiffs' images outside the scope of K2 Corp.'s license and

19   after expiration of K2 Corp.'s license, (2) contributorily infringed Plaintiffs' copyright by

20   knowingly contributing to third-party infringement, (3) breached the 2000 and 2001

21   Agreements as informed by the Delivery Memoranda by failing to include proper photo

22   credit and copyright notice in its displays of Plaintiffs' images, by failing to negotiate with

23   Plaintiffs for an expanded license before permitting third-party use, and by failing to return

24

25

26

ORDER  15–

1  835 original photographic slides to Plaintiffs, and (4) committed a common law conversion

2  of Plaintiffs' 835 original slides by failing to return them to Plaintiffs upon request.

3      Summary judgment is appropriate where there is no genuine issue of material fact and

4  the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The

5  moving party bears the initial burden of demonstrating the absence of a genuine issue of

6  material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party

7  has met this burden, the opposing party must show that there is a genuine issue of fact for

8  trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The

9  opposing party must present significant and probative evidence to support its claim or

10  defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir.

11  1991). For purposes of the motion, reasonable doubts as to the existence of material facts

12  are resolved against the moving party and inferences are drawn in the light most favorable to

13  the opposing party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

14
15  **1.  Copyright Infringement**

16      The Ninth Circuit recognizes claims of both direct copyright infringement and

17  contributory copyright infringement. Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir.

18  2004). To establish a claim of direct copyright infringement, Plaintiffs must show (1)

19  ownership of a valid copyright and (2) that Defendant violated one or more of Plaintiffs'

20  exclusive rights under the Copyright Act. Id. A defendant that, "with knowledge of the

21  infringing activity, induces, causes or materially contributes to the infringing conduct of

22  *another*" may be held liable for contributory copyright infringement. Id. (emphasis in

23  original) (quoting Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159,

24  1162 (2nd Cir. 1971)). "Knowledge" includes actual knowledge and reason to know of

25  direct infringement. Id. Thus, both direct and contributory infringement claims require

26  ownership of a valid copyright and violation of one of the exclusive rights of a copyright

holder; but direct infringement liability requires that the defendant violate one of the

ORDER  16–

1  exclusive rights, whereas contributory infringement requires only that the defendant

2  "induce[], cause[], or materially contribute[] to the infringing conduct of another..." Id.

3  Plaintiffs claim that K2 Corp. directly infringed its copyright by using their images on web

4  sites and contributorily infringed their copyright by facilitating third-party use of their

5  images in advertisements, by K2 Corp.'s subsidiaries, and in editorial reviews of K2 Corp.

6  products.

7             **a.**    **Copyright Ownership**

8        A certificate of registration made within five years of the first publication of the

9  registered work constitutes "prima facie evidence of the validity of the copyright and of the

10  facts stated in the certificate."  17 U.S.C. § 410(c).  This presumption can be rebutted by

11  offering "some evidence or proof to dispute or deny the plaintiff's prima facie case..."

12  Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003)

13  (quoting Entm't Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1217

14  (9th Cir. 1997)).  Plaintiffs have submitted into evidence copies of copyright registration

15  certificates that they contend cover the images produced under the 2000 and 2001

16  Agreements.  Jarvis Decl. I ¶¶ 8-9, Exs. D and E.  Defendant does not claim copyright in any

17  of the images produced under the 2000 or 2001 Agreements or challenge Plaintiffs'

18  ownership of copyright in the images.  See generally Def.'s Resp., docket no. 72, at 11-12.

19  Because Plaintiffs have established a valid prima facie case of copyright ownership in the

20  images created under the 2000 and 2001 Agreements and Defendant does not dispute

21  copyright ownership, the Court holds that Plaintiffs own the copyright in those images.

22             **b.**    **Direct Infringement of Plaintiffs' Exclusive Rights Under the**

23                       **Copyright Act**

24

25        Section 106 of the Copyright Act grants to the copyright holder the exclusive right to

26  perform and authorize the following actions:

ORDER  17–

1       (1) to reproduce the copyrighted work in copies or phonorecords;

2       (2) to prepare derivative works based upon the copyrighted work;

3       (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

4       ***

5       (5) in the case of...pictorial, graphic, or sculptural works, including the individual images of a motion picture...to display the copyrighted work publicly...

6   17 U.S.C. § 106.  Plaintiffs argue that K2 Corp. violated Plaintiffs' exclusive right to display

7   Plaintiffs' images by displaying Plaintiffs' images on K2 Corp.'s online web sites after K2

8   Corp.'s rights to do so expired.  Plaintiffs also argue that "[t]hese displays necessarily

9   implicate other rights...namely, copying and distributing the images and creating derivative

10  works."  Mot. Summ. Judg. at 13-14.

11

12      <u>1.</u>    <u>K2 Corp.' s Online Use of Plaintiffs' Images After</u>

13                <u>Expiration of K2 Corp.'s Image Use Rights</u>

14      When a license to use a copyrighted work is limited in scope, the licensee infringes

15  the owner's copyright by using the licensed work outside the scope of the license.  <u>See</u>

16  <u>S.O.S., Inc. v. Payday, Inc.</u>, 886 F.2d 1081, 1087 (9th Cir. 1989); <u>see also</u> <u>Sun</u>

17  <u>Microsystems, Inc. v. Microsoft Corp.</u>, 188 F.3d 1115, 1121 (9th Cir. 1999) ("If...a license is

18  limited in scope and the licensee acts outside the scope, the licensor can bring an action for

19  copyright infringement."); <u>Greenfield v. Twin Vision Graphics, Inc.</u>, 268 F. Supp. 2d 358,

20  382-84 (D.N.J. 2003) (use of copyrighted photograph after expiration of license constitutes

21  copyright infringement).  K2 Corp. does not deny that it displayed Plaintiffs' copyrighted

22  images on its web sites after its rights to do so expired under the 2000 and 2001 Agreements.

23  K2 Corp. argues that it inadvertently displayed Plaintiffs' images online after its rights to do

24  so expired, but fails to cite any statute or case law suggesting that intent is a necessary

25  element for copyright infringement or that inadvertence is a defense.

26

ORDER  18—

1        Defendant asserts that while many of the images Plaintiffs transferred to K2 Corp.

2  were governed by the license agreements, Plaintiff Jarvis orally transferred the "Gravity

3  Tools" images to K2 Corp. free and clear. Bell Decl., docket no. 73, Ex. B (Fuller Dep. at

4  65:lns. 2-22). Plaintiffs do not contest this assertion. Therefore, Defendant argues, K2

5  Corp.'s use of these images past the expiration of the license was not direct infringement.

6  However, taking these facts in the light most favorable to K2 Corp., use of the Gravity Tools

7  images after the expiration of the license would still infringe on Plaintiffs' copyright because

8  an oral transfer of the copyright is ineffective. First, the Copyright Act states that a transfer

9  of copyrighted material, other than by operation of law, must be in writing to be valid. 17

10  U.S.C. § 204. Second, the "Gravity Tools" images were shot by Mr. Jarvis at Stevens Pass

11  during the 2000-2001 ski year and thus are governed by the 2000 Agreement, which may

12  only be modified in writing. Jarvis Decl. I, Ex. A at III.A, XII. Because the alleged transfer

13  of the Gravity Tools images was oral, it did not satisfy the requirements of either the

14  Copyright Act or the 2000 Agreement. Thus, because K2 Corp. does not dispute that it

15  displayed Plaintiffs' images on its web sites outside the scope of its license, does not dispute

16  that Plaintiffs' hold valid copyrights in the images displayed, and the alleged oral transfer of

17  the Gravity Tools Images was ineffective, the Court holds that K2 Corp. infringed Plaintiffs'

18  copyright by displaying Plaintiffs' images online after termination of its license to do so.

19        <u>c.</u>   **<u>Contributory Infringement of Plaintiffs' Exclusive Rights</u>**

20           **<u>under the Copyright Act</u>**

21        A defendant that, "with knowledge of the infringing activity, induces, causes or

22  materially contributes to the infringing conduct of *another*" may be held liable for

23  contributory copyright infringement. <u>Ellison</u>, 357 F.3d at 1076 (emphasis in original)

24  (quoting <u>Gershwin</u>, 443 F.2d at 1162). Knowledge in this context includes both actual

25  knowledge and reason to know. <u>Id.</u> Thus, contributory infringement liability requires (1)

26  that a third party engage in direct infringement, (2) that the defendant know or have reason to

ORDER  19–

know of the infringing conduct, and (3) that the defendant "induce[], cause[] or materially contribute[] to" the third-party infringement.  Plaintiffs argue that K2 Corp. contributorily infringed their copyrights by inviting third-party dealers to use their images in advertisements, and making images available to K2 Corp.'s subsidiaries for marketing purposes and to third-party news sources for use in editorial reviews of K2 Corp. products.

### 1.   Direct Infringement

In order to hold K2 Corp. contributorily liable, Plaintiffs must be entitled to judgment as a matter of law that the third parties at issue directly infringed Plaintiffs' copyright.

#### a.   Dealer Advertisements

Plaintiffs have submitted into evidence copies of two print advertisements ("Dealer Advertisements") that feature images licensed to K2 Corp. under the 2000 Agreement, the K2 Corp. logo and the contact information of third-party dealers that sell K2 Corp. equipment.  Jarvis Decl. I, Ex. J at 130-35.  There is no dispute that K2 Corp. provided copyrighted images to third parties for these advertisements.  Defendant asserts, and Plaintiffs do not dispute, that the images used in the allegedly infringing Dealer Advertisements were all subject to the 2000 Agreement.  In order for the Dealer Advertisements to be infringing, they must fall outside of the use allowed in the 2000 Agreement.  Defendant argues that the language in the 2000 agreement is ambiguous and a reasonable interpretation could include the use of the images in Dealer Advertisements.

"In construing a written contract, the basic principles require that (1) the intent of the parties controls; (2) the court ascertains the intent from reading the contract as a whole; and (3) a court will not read an ambiguity into a contract that is otherwise clear and unambiguous."  Mayer v. Pierce County Medical Bureau, Inc., 80 Wash. App. 416, 420 (1995).  "A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable."  Weyerhauser Co. v. Commercial Union Ins.

ORDER  20–

1    Co., 142 Wash 2d. 654, 666 (2000).  If a contractual clause is ambiguous, extrinsic evidence

2    of the intent of the parties may be relied on to resolve the ambiguity.  Id.

3            The 2000 Agreement grants K2 Corp. the right to use Plaintiffs' images in "[K2

4    Corp.'s] own...print advertisements...," but prohibits "external use" without an additional

5    license.  Jarvis Decl. I, Ex. A at 10.  Plaintiffs argue that the Dealer Advertisements are not

6    "[K2 Corp.'s] own...print advertisements" under the terms of the 2000 Agreement, constitute

7    "external use," and are thus infringements.  Defendant argues that the Dealer Advertisements

8    are "[K2 Corp.'s] own...print advertisements" despite the presence of dealer contact info,

9    that the terms "[K2 Corp's] own...print advertisements" and "external use" are ambiguous,

10   and that whether the Dealer Advertisements use of Plaintiffs' images is within the scope of

11   the 2000 Agreement is a disputed issue of material fact.

12           Both "[K2 Corp's] own...print advertisements" and "external use" are clear and

13   unambiguous terms.  K2 Corp.'s "own...print advertisement" includes any use of an image

14   that K2 Corp. develops and places in a publication itself.  "External use" includes any

15   modification of an image or publication of an image by an entity other than K2 Corp.  K2

16   Corp. attempts to interpret these terms as allowing use of Plaintiffs' images in any

17   advertisements that feature K2 Corp. products, regardless of the presence of third-party

18   contact information.  However, the third-party contact information is there only because a

19   third-party *used* the image to promote its own business, hence it is external use.  Once K2

20   Corp. makes images available to third parties to manipulate and distribute, the third parties

21   use of those images is "external use".  Because these terms are unambiguous, the Court need

22   not turn to extrinsic evidence to ascertain the parties intent.  Therefore, the Court holds that

23   the Dealer Advertisements directly infringed Plaintiffs' copyright.

24                              **b.**      **Subsidiaries**

25

26

ORDER  21--

1    Plaintiff has averred and submitted evidence that K2 Corp. has provided Plaintiffs'

2  copyrighted images to at least one of its subsidiaries, K2 Japan.  K2 Corp. does not dispute

3  that the subsidiaries did use Plaintiffs' images, but argues that such use was within the scope

4  of the license agreements because its terms were ambiguous.  This argument was found

5  inadequate above and remains so here.  The Court finds that the subsidiaries' use of

6  Plaintiffs' images was infringing.

7              **c.    Media Use**

8    Four separate third-party media outlets (*The Seattle Post-Intelligencer, Outdoor*

9  *Retailer, The Washington Post,* and *Hooked on the Outdoors*) have reproduced and/or

10  displayed Plaintiffs' images in connection with articles on K2 Corp. products and/or winter-

11  sport products in general.  Jarvis Decl. I, Ex. J at 145-53.  Current and former employees of

12  K2 Corp. state that it was K2 Corp.'s practice to make images available to the press.  Shelley

13  Decl. ¶¶ 4, 6, Ex. C (Petrick Dep. at 114:ln 17-115:ln 22), Ex. E (Fuller Dep. at 54:lns. 21-

14  22).  At least one third party magazine publisher testified in a deposition that he obtained

15  Plaintiffs' images from the K2 Corp. website which he then modified and published.  Id. ¶ 8,

16  Ex. G (Sadowsky Dep. at 21:lns. 1-11).  Plaintiffs claim that such use is "external use" and

17  not allowed under the 2000 Agreement.  Defendant does not dispute that such use falls

18  outside the scope of the 2000 Agreement, but argues that such use is not infringing because

19  the media would be able to use the images under the fair use doctrine.  Generally, fair use is

20  a mixed question of law and fact and district courts should be cautious in granting summary

21  judgment.  Wright v. Warner Books, Inc., 953 F.2d 731, 735 (2d Cir. 1991).  However, this

22  exercise of caution does not mean that summary judgment is inappropriate when there are no

23  genuine issues of material fact.  Id.  Unauthorized use of a copyrighted work is not an

24  infringement if such use falls under the fair use doctrine.  17 U.S.C. § 107.  When

25  considering whether an alleged infringement is fair use, courts consider "(1) the purpose and

26  character of the use, including whether such use is of a commercial nature or is for nonprofit

ORDER  22–

1  educational purposes; (2) the nature of the copyrighted work; (3) the amount and

2  substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the

3  effect of the use upon the potential market for...the copyrighted work." Id. Because there

4  are no genuine issues of material fact surrounding the editorial uses of Plaintiffs' images and

5  each of the fair use factors weighs in favor of Plaintiffs when applied to these uses, the Court

6  holds that such uses are not fair use and infringe Plaintiffs' copyright.

7       **Purpose and Character of the Use.**  The primary inquiry under this factor is

8  whether or not the alleged infringer's use is "transformative," or merely serves to supplant or

9  supercede the original.  See Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 578 (1994).

10  The more transformative an alleged infringer's use, the less important other characteristics,

11  such as the commercial nature of the use, become.  See id.  Defendant argues that the

12  purpose of the disputed editorial uses of Plaintiffs' images is news reporting and, as such,

13  that this use is non-infringing.  However, as the Supreme Court stated in Harper & Row

14  Publishers, Inc. v. Nation Enterprises, "[t]he issue is not what constitutes 'news,' but whether

15  a claim of newsreporting is a valid fair use defense to an infringement of *copyrightable*

16  *expression*.... The crux of the profit/nonprofit distinction is not whether the sole motive of

17  the use is monetary gain but whether the user stands to profit from exploitation of the

18  copyrighted material without paying the customary price." 471 U.S. 539, 561 (1985)

19  (emphasis in original) (quoting William F. Patry, The Fair Use Privilege in Copyright 119

20  (1985)).  The Harper & Row Court held that the defendant magazine publisher's

21  unauthorized reproduction of excerpts of President Gerald Ford's memoirs was done for

22  commercial purpose and was not a fair use, despite the news value of the content.  See

23  generally id.  In this case, the editorial sources used Plaintiffs' images in conjunction with

24  articles that did not criticize, comment, or report on the images themselves, but on the K2

25  Corp. products shown in the images.  This use does not transform or elaborate on Plaintiffs'

26

ORDER  23--

1  original copyrighted expression, but merely reproduces it in another setting for a commercial

2  purpose.  Thus, this factor weighs in favor of Plaintiffs.

3  **Nature of the Copyrighted Work.**  Creative works are closer to the core of intended

4  copyright protection than fact-based works and are generally more strictly protected against

5  claims of fair use.  See Campbell, 510 U.S. at 586.  "[T]he art of photography has generally

6  been deemed sufficiently creative to make the second fair use factor weigh in favor of

7  photographer-plaintiffs."  Baraban v. Time Warner, Inc., 2000 WL 358375 at *4 (S.D.N.Y.).

8  Thus, because Plaintiffs' images fall close to the core of creative expression protected by

9  copyright, this factor weighs in favor of Plaintiffs.

10  **Amount and Substantiality of the Portion Used.**  Courts not only consider the

11  quantitative amount taken from the copyrighted work, but the qualitative nature of the

12  amount copied.  Campbell, 510 U.S. at 587; see also Harper & Row, 471 U.S. at 564-66

13  (approving the District Court's assessment that the alleged infringer appropriated "the heart"

14  of the copyrighted work).  Because the Court does not have access to Plaintiffs' uncropped

15  originals, it is impossible to determine mathematically the amount of Plaintiffs' images that

16  the editorial sources reproduced.  However, the evidence clearly shows that the editorial

17  sources used "the heart" of the images they chose to display by featuring skiers,

18  snowboarders, and other winter sports athletes in a "close-up" fashion.  Jarvis Decl. I, Ex. J

19  at 145-52.  Thus, this factor favors Plaintiffs because the editorial sources used a

20  qualitatively substantial portion of Plaintiffs' images.

21

22  **Effect on Potential Market.**  "[T]o negate fair use one need only show that if the

23  challenged use 'should become widespread, it would adversely affect the *potential* market for

24  the copyrighted work.'"  Harper & Row, 471 U.S. at 568 (emphasis in original) (quoting

25  Sony Corp. of America v. Universal City Studios, Inc. 464 U.S. 417, 451 (1984)).  The

26  Second Circuit has stated that lost licensing revenue from customary licensing sources is

considered in determining the negative effect on the potential market of a copyrighted work.

ORDER  24-

1   Ringold v. Black Entertainment Television, Inc., 126 F.3d 70, 81 (2nd Cir. 1997) (citing

2   American Geophysical Union v. Texaco Inc., 60 F.3d 913, 929-31 (1994)). Plaintiff Jarvis

3   avers that it is customary for newspapers and other third parties to obtain a license from a

4   photographer when they wish to use that photographer's copyrighted image, Jarvis Decl. I ¶

5   21, and that no newspaper or other third party obtained a license from Plaintiffs to use any

6   images produced under the 2000 or 2001 Agreements. Id. ¶ 22. Defendant does not dispute

7   either of these contentions. Clearly, if this practice were to become widespread, it would

8   destroy Plaintiffs' potential market for customary license fees from newspapers and other

9   editorial sources. Thus, this factor, along with the other three fair use factors, weighs in

10  favor of Plaintiffs, and that the editorial uses of Plaintiffs' images are infringements and not

11  fair use.

12              **2.      Knowledge or Reason to Know of Infringing Activity**

13          To be held liable for contributory infringement, the defendant must know or have

14  reason to know of the direct infringement. A&M Records, Inc. v. Napster, Inc., 239 F.3d

15  1004, 1020 (9th Cir. 2001). K2 Corp. argues that, in order to satisfy the knowledge

16  requirement, it not only must know or have reason to know of the disputed third-party use of

17  Plaintiffs' images, but it must also know or have reason to know that such use is an

18  infringement. Thus, Defendant argues that it did not know of "the infringing activity"

19  because it reasonably believed that such activity fell within the scope of its license or was

20  non-infringing fair use. Religious Tech. Ctr. v. Netcom Online Communication Servs., Inc.,

21  907 F. Supp. 1361, 1374 (N.D. Cal. 1995). As noted above, K2 Corp.'s "reasonable belief"

22  that the third-party use fell within the scope of the 2000 Agreement is based on a strained

23  reading of the clear and unambiguous 2000 Agreement. K2 Corp. should have known that

24  the Dealer Advertisements, subsidiary use and Media Use were directly infringing Plaintiffs'

25  copyright because the 2000 Agreement specifically excluded "external use" from its scope.

26              **3.      Material Contribution to Infringement**

ORDER  25–

1    To be held liable for contributory copyright infringement, the defendant must have

2  materially contributed to another's infringement. Ellison, 357 F.3d at 1077.   Plaintiffs have

3  submitted evidence that K2 Corp. made images available to third-party dealers, the media

4  and K2 Corp.'s subsidiaries specifically for marketing purposes.  Jarvis Decl. I ¶¶ 17, 23, 26,

5  Ex. J at 145-50, Ex. K at 162, Ex. L at 165.  K2 Corp. does not advance any argument on the

6  issue of materiality.  By making Plaintiffs' images available to third parties for use in

7  advertisements and on websites, K2 Corp. materially contributed to their infringing activities.

8    **Conclusion on Contributory Infringement**

9    Defendant is liable for contributory infringement of Plaintiffs' images because (1) the

10  Dealer Advertisement use, subsidiaries' use, and Media Use all directly infringed Plaintiffs'

11  copyright, (2) Defendant knew or should have known that this use was infringing and (3)

12  Defendant materially contributed to the infringement.

13    **2.    Breach of Contract**

14

15    Plaintiffs claim that K2 Corp. breached the 2000 and 2001 Agreements by displaying

16  Plaintiffs' images without credit to Plaintiffs, by permitting third-parties to use Plaintiffs'

17  images, and by failing to return 835 of Plaintiffs' original slides.

18    **a.    K2 Gravity Tools Images**

19    Defendant argues that the Gravity Tools Images were given by Plaintiff free and clear

20  of the Agreements by an oral transfer and therefore cannot be the subject of a breach of

21  contract claim.  The Court rejects this argument for the same reasons it rejected it above: the

22  Copyright Act requires that copyright transfers be in writing and the Agreements require any

23  modifications to be in writing.  See 17 U.S.C. § 204; Jarvis Decl. I, Ex. A at III.A, XII.

24  Therefore, this alleged oral transfer fails as a matter of law to modify the Agreements.

25    **b.    No Ambiguity in Third Party Uses or Auto Wrap**

26

ORDER  26–

1     Defendant argues that the 2000 Agreement was ambiguous as to whether Dealer

2  Advertisements and subsidiaries' use were prohibited "external uses". This argument is

3  analyzed above and found to be without merit.

4     Defendant further argues that the scope of the license was ambiguous as to the use of

5  the Jarvis images in a vehicle wrap. Defendant argues that a vehicle wrap was a type of

6  "print advertisement." However, a close look at the language of the Agreements

7  demonstrates the disingenuousness of this argument. Both the 2000 and 2001 Agreements

8  specify that the images may be used for "brochures, print advertisements, trade show display

9  booths, posters, and electronically for the web." Jarvis Decl. I, Ex. A at II.C, Ex. B. at II.C.i.

10  A plain reading of this contract provision indicates that brochures, display booths and posters

11  were separately listed because the parties to the contract did not consider them to be "print

12  advertisements". Vehicle wraps are less similar to print advertisements than any of these

13  separately listed uses, therefore there is no ambiguity in the contract regarding vehicle wraps

14  and vehicle wraps are outside of the scope of the Agreements.

15          **c.**     **No Equitable Estoppel on Omission of Photo Credits**

16

17     Both the 2000 and 2001 Agreement state that a "[p]hoto credit to read 'Photo: Chase

18  Jarvis' or its equivalent with copyright notice, is required on all uses, print, web, and

19  otherwise," that "all images pursuant to this Agreement, without exception, require photo

20  credit and copyright to Chase Jarvis," and that "[o]mission of photo credits will be

21  considered...a breech [sic] of contract." Jarvis Decl. I, Ex. A at II.C, Ex. B at II.C.3. The

22  Delivery Memoranda state that copyright notice and a photo credit to Chase Jarvis were

23  required for use. Id. ¶ 7, Ex. C at 22-35. Plaintiffs have submitted evidence that K2 Corp.

24

25

26

ORDER  27–

1  displayed Plaintiffs' images without the required photo credit in at least 67 instances,[3] id. ¶
2  16, Ex. I at 62-70, 72-73, and Defendant does not dispute this assertion.

3      K2 Corp. argues that the doctrine of equitable estoppel bars Plaintiffs' breach of
4  contract claim for failure to include the proper photo credit.  Under Washington law, the
5  elements of equitable estoppel are "(1) an admission, act or statement inconsistent with a
6  later claim; (2) another party's reasonable reliance on the admission, act or statement; and (3)
7  injury to the other party which would result if the first party is allowed to contradict or
8  repudiate the earlier admission, act or statement." Dept. of Ecology v. Campbell & Gwinn,
9  L.L.C., 146 Wash. 2d 1, 20 (2002).  Silence coupled with knowledge of an adverse claim
10 will estop a party from later asserting an inconsistent claim.  Board of Regents v. City of
11 Seattle, 108 Wash. 2d 545, 553 (1987).  K2 Corp. argues that Plaintiffs knew of K2 Corp.'s
12 uncredited and miscredited image use under the 2000 Agreement, that Plaintiffs failed to
13 complain of this use and committed the inconsistent acts of continuing to supply K2 Corp.
14 with photographs and entering into the 2001 Agreement, that these acts led K2 Corp. to
15 believe that the photo credit provisions of the Agreements were without force, that K2 Corp.
16 failed to include the proper photo credits in reliance on this belief, and that allowing
17 Plaintiffs to now claim breach of contract based on K2 Corp.'s failure to include proper
18 photo credits would cause an unjust injury to K2 Corp.

19     The evidence, however, does not support K2 Corp.'s estoppel claim.  First, the
20 paragraph of Mr. Petrick's Declaration to which K2 Corp. cites in its Response to support its
21 assertion that Plaintiffs were aware of K2 Corp.'s uncredited photo use provides no such
22 support and is partially based on hearsay.  See Petrick Decl. ¶ 9.  In fact, Defendant has not
23 submitted any evidence or made any assertion regarding when Plaintiffs allegedly obtained
24 knowledge of K2 Corp.'s uncredited image use.  The only evidence submitted on this matter
25

26 [3] This is not including images used in editorial articles or advertisements featuring third-
party dealers.

ORDER  28--

1  suggests that Plaintiff Jarvis thought K2 Corp. was substantially compliant with the photo

2  credit requirements when he signed the 2001 Agreement. Jarvis Decl. II, docket no. 47, ¶ 22.

3  Second, Plaintiff Jarvis did contact K2 Corp. and complain of its uncredited image use, and

4  Plaintiffs have submitted evidence suggesting Plaintiff Jarvis regularly attempted to remind

5  K2 Corp. of its image use restrictions and obligations. Jarvis Decl. I ¶¶ 12-15, Exs. F-H,

6  Jarvis Decl. II ¶¶ 16, 20. Third, even assuming that Plaintiffs knew of K2 Corp.'s

7  uncredited image use and acted inconsistently with a claim based on this use, Defendant has

8  failed to submit any declaration or evidence supporting its assertion that K2 Corp. believed

9  the photo credit provisions of the 2000 and 2001 Agreements were without force or that K2

10  Corp.'s decision to display Plaintiffs' images without the proper photo credit was in any way

11  reached in reliance on such a belief or on Plaintiffs' allegedly inconsistent acts. In fact, the

12  evidence suggests that K2 Corp. made its decisions regarding use of Plaintiffs' images

13  independently of any complaints or attempted guidance that Plaintiffs sent to K2. Corp. See

14  Jarvis Decl. I ¶¶ 5-7, 12-20, Exs. A-C, F-J; Jarvis Decl. II ¶¶ 12, 16, 24. When a motion for

15  summary judgment is made and properly supported, the defendant may not "rest upon...mere

16  allegations," but "must set forth specific facts showing that there is a genuine issue for trial."

17  Fed. R. Civ. P. 56(e). Thus, the Court finds that K2 Corp. breached the 2000 and 2001

18  Agreements by displaying Plaintiffs' images without the required photo credit.

19  **d.    K2 Corp.'s Permitting Third Parties to Use Jarvis Images**

20  The 2000 Agreement is clear and unambiguous as to the meaning of "[K2 Corp.'s]

21  own...print advertisements" and "external use". Dealer Advertisements and subsidiary use

22  constitute external use. K2 Corp. does not dispute that News Media use of Plaintiffs' images

23  constitutes prohibited external use. The 2000 Agreement requires that such external use of

24  Plaintiffs' images "be negotiated with [Plaintiffs] prior to their use." Jarvis Decl. I, Ex. A at

25  II.C. Plaintiffs argue that K2 Corp. breached the 2000 Agreement by failing to negotiate

26  with Plaintiffs before making Plaintiffs' images available for external use. K2 Corp. does

ORDER  29–

1   not deny that it failed to negotiate with Plaintiffs, but argues that Plaintiffs' breach of

2   contract claim based on this failure is preempted by the Copyright Act.

3       A state law claim is preempted by the Copyright Act if (1) the work involved falls

4   within subject matter of the Copyright Act and (2) the rights asserted in the state law claim

5   "are equivalent" to those protected by the Copyright Act. See Kodadek v. MTV Networks,

6   Inc., 152 F.3d 1209, 1212 (9th Cir. 1998); 17 U.S.C. § 301(a).  To avoid preemption, the

7   state law claim must contain an "extra element" that changes the nature of the action.  Del

8   Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987) (overruled

9   on other grounds).  The Copyright Act provides the copyright holder with the exclusive

10  rights to reproduce, prepare derivative work, to distribute and to display.  17 U.S.C. § 106.

11      In this case, the first element of the preemption claim is easily met as the works

12  involved are photographic images that clearly fall under the "pictorial, graphic, [or]

13  sculptural works" subject matter of the Copyright Act.  17 U.S.C. § 102(a)(5).  The second

14  element requires more analysis.  According to the court in Selby v. New Line Cinema Corp.,

15  the Ninth Circuit has not yet decided "under what circumstances the Copyright Act preempts

16  a claim for breach of an express contract."  96 F. Supp. 2d 1053, 1059 (C.D. Cal. 2000).

17  Whether a breach of contract claim contains an extra element depends on the nature of the

18  contractual right.  Del Madera, 820 F.2d at 977.  After a careful analysis of two different

19  approaches courts have taken to determine when a contract is or is not preempted, the court

20  in Selby adopted an approach which requires an analysis of whether "the right in question is

21  'infringed by the mere act of reproduction, performance, distribution or display.'" 96 F.

22  Supp. 2d at 1061 (quoting National Car Rental, 991 F.2d 426, 431 (8th Cir. 1993)).[4]  In Nat'l

23

24  _____

25  [4] The two approaches were: (1) a defendant's promise to refrain from using plaintiff's ideas
    without compensation provides the necessary extra element and (2) whether there is an
26  extra element should be determined by an analysis of the difference in the scope of
    protection of the Copyright Act and the contract.  Selby, 96 F. Supp. 2d at 1059-61.

ORDER  30–

1  Car Rental Sys. v. Computer Assocs., an Eighth Circuit case cited by the court in Selby as

2  important precedent, the court held that "[i]f an extra element is "required, instead of or in

3  addition to the acts of reproduction, performance, distribution or display, in order to

4  constitute a state-created cause of action, then the right does not lie 'within the general scope

5  of copyright' and there is no preemption." 991 F.2d at 431 (citing 1 Nimmer on Copyright, §

6  1.01 [B] at 1-14-15). In Selby, the contract prevented defendant from using the plaintiff's

7  ideas and the court found that this did not prohibit any more conduct than that already

8  prohibited by the Copyright Act. Id. at 1062. In Nat'l Car Rental Sys., the court found that a

9  contractual provision limiting defendant's use of the plaintiff's copyrighted software to

10  "internal" use only created a contractual restriction that would not exist but for the contract

11  and thus the plaintiff's claim for breach of contract was not simply a repackaging of the

12  plaintiff's copyright claims. 991 F.2d at 433.

13      In the current case, the Agreements at issue, while in effect, do not only prohibit K2

14  Corp. from reproducing, performing, distributing or displaying Plaintiffs' images. With

15  certain limitations, K2 Corp. may perform any of these acts during the life of each

16  Agreement. Jarvis Decl. I, Ex. A at II.A., II.C., Ex. B. II.A. II.C.I.-II. The Agreements do,

17  however, prohibit K2 Corp. from distributing the images to third parties for their use without

18  previously negotiating such use with Plaintiffs. Id. This restriction on third-party use and

19  the duty to negotiate are not contained in the Copyright Act. See 17 U.S.C. § 106.

20  Therefore, they add "extra-elements" to the rights contained in the Copyright Act and

21  Plaintiffs' breach of contract claim premised on third-party use is not preempted. Because

22  Defendant admits that such third party use occurred, the Court finds that K2 Corp. breached

23  its contracts with Plaintiffs by permitting third-parties to use the Jarvis images without first

24  negotiating with Plaintiffs.

25          **e.**      **K2's Failure to Return 835 Slides to Plaintiffs**

26

ORDER  31–

1      Both the 2000 and 2001 Agreement state that "Jarvis owns...photographs he

2 produces", both have integration clauses, and both state "[f]or additional terms and

3 conditions standard to the photographic image industry, consult Jarvis, licensor." Jarvis

4 Decl. I, Ex. A at I.A, II.E.vii, XII, Ex. B at I.A., II.E.v, XII. This last term includes the

5 standards of the photographic image industry in the contract. Neither Agreement explicitly

6 states that K2 Corp. has an obligation to return Plaintiffs' original photographic slides after

7 delivery to K2 Corp. See Petrick Decl. ¶ 4, docket no. 40, Exs. A and B. Plaintiffs sent

8 Delivery Memoranda to K2 Corp. along with original slides stating that "[l]oss or damage of

9 any image will result in an $1500 fee per image, as set forth by industry standards," that "[i]f

10 any delivery differs in any way from what is claimed herein, the client must notify Chase

11 Jarvis or his assigns within 48 hours of receipt," and that "acceptance of this delivery

12 constitutes [K2 Corp.'s] acceptance of all terms and conditions herein." See Jarvis Decl. I ¶

13 7, Ex. C. K2 Corp. never rejected delivery of Plaintiffs' images or claimed that the number

14 of images delivered differed from that stated on the Delivery Memoranda. Id. ¶ 28.

15 Defendant argues that the Delivery Memoranda are ineffectual because both the 2000 and

16 2001 Agreements contained integration clauses stating, "[t]his Agreement constitutes the

17 entire agreement of the parties as to the subject matter hereof. This Agreement may only be

18 modified in writing signed by the parties hereto." Id., Ex. A at XII, Ex. B at XII. However,

19 Plaintiffs need not rely on the Delivery Memoranda Agreements to prove that Defendant had

20 a contractual obligation to return the images to Jarvis because Timothy Petrick, Senior Vice

21 President of K2 Corp., admits in his deposition that returning images to the photographer is

22 an industry custom or practice. Shelley Decl. ¶ 4, Ex. C (Petrick Dep. at 53:lns 1-15).

23 Therefore, the duty to return images is integrated into the Agreements and K2 Corp.

24 breached the Agreements by failing to return the Plaintiffs' photographic images.

25      Defendant disputes the accuracy of Plaintiffs' record keeping system and argues that

26 the upward revision of the number of images, from 396 to 835 missing slides, adds weight to

ORDER  32–

1   Defendant's argument that Plaintiffs' own accounting errors resulted in the missing images.

2   K2 Corp. does not advance any evidence that it has a record keeping system of its own.  In

3   his third declaration in this case, Mr. Jarvis explains that his subsidiary Benchmark 10 sent

4   the recently discovered 439 images to K2 Corp. and that the images were not included in Mr.

5   Jarvis's inventory of images sent to K2 Corp., but were included in his inventory of images

6   returned.  Jarvis Decl. III at ¶ 4, Ex. A.  Mr. Jarvis has documentation, although it is difficult

7   to read, of the original 396 missing images. Jarvis Decl. I, ¶¶ 16-17, Ex. L.  In a declaration,

8   Mr. Jarvis describes the process of counting the slides K2 Corp. returned to him in April,

9   2003 and the subsequent return of more slides, leaving the original missing number at 396.

10  Jarvis Decl. II, ¶¶ 34.  Mr. Jarvis also stated in the deposition that when the slides are

11  returned to him he counts them and then they are re-filed back into the storage system.  Bell

12  Decl., Ex A (Jarvis Dep. at 33:lns. 5-12).  Defendant argues that Plaintiffs' accounting

13  system is rife with opportunities for human error.  In addition to the upwardly revised

14  missing image count, Defendant notes that Jarvis has assistants that help him put the images

15  back into the notebooks, although Jarvis states these notebooks are not how he determines

16  which images are missing.  Id. (Jarvis Dep. at 30:ln 21-31: ln 6; 34:ln 25 - 36:ln 4).  There is

17  no evidence that Mr. Jarvis's assistants logged the returned photographs for him.  However,

18  Plaintiffs' explanation of their system of accounting for slides, particularly given the recently

19  discovered discrepancy, is somewhat confusing.  Therefore, the Court finds that there is a

20  genuine issue of material fact as to precisely how many photographic images have not been

21  returned to Plaintiffs.

22      **3.   Conversion**

23      The tort of conversion is "the act of wilfully interfering with any chattel, without

24  lawful justification, whereby any person entitled thereto is deprived of the possession of it."

25  Kruger v. Horton, 106 Wash. 2d 738, 743 (1986) (quoting Judkins v. Sadler-Mac Neil, 61

26  Wash. 2d 1, 3 (1962)).  Plaintiffs assert that they delivered at least 3,030 original

ORDER  33·

1   photographic slides to K2 Corp. and that K2 Corp. has failed to return 835 of these slides

2   despite Plaintiffs' request to do so, and have submitted evidence supporting these assertions.

3   Jarvis Decl. I ¶¶ 26-27, Ex. L; Jarvis Decl. III ¶¶ 4-6, Ex. A.  Defendant argues that a

4   disputed issue of material fact exists as to whether Plaintiffs are entitled to the slides.  This

5   second argument fails in light of the clear language of the 2000 and 2001 Agreements, stating

6   that "Jarvis owns...photographs he produces," Jarvis Decl. I, Ex. A at I.A, Ex. B at I.A, and

7   Defendant's failure to introduce any evidence suggesting that Plaintiffs intended to convey

8   ownership to K2 Corp.  Moreover, even if the 2000 and 2001 Agreements were intended to

9   give K2 Corp. rights in the original photographic slides, neither contract mentions any

10  conveyance of rights that last beyond May of 2003.  See id., Exs. A and B.  The Court finds

11  that the Defendant is liable for conversion for any of the Plaintiffs' slides that it has failed to

12  return.

13          Defendant also argues that Plaintiffs' record keeping practices are unreliable.  As

14  analyzed above, Defendant's argument that Plaintiffs' record keeping system may be flawed

15  reveals an issue of material fact regarding the accuracy of Mr. Jarvis's missing slide count.

16  Thus, the Court finds that there is a genuine issue of material fact as to the number of

17  photographic images the Defendant converted.

18                                        **CONCLUSION**

19          For the reasons stated herein, the Court hereby GRANTS Defendants' motion to

20  dismiss for failure to state a claim, docket no. 64, with respect to Plaintiffs' claims of

21  contributory copyright infringement by K2 Inc., vicarious infringement by K2 Inc., violation

22  of the Washington Consumer Protection Act by K2 Inc. and K2 Corp., accounting by K2

23  Inc., breach of contract by K2 Inc., and conversion by K2 Inc. and the Court DENIES

24  Defendants' motion to dismiss for failure to state a claim with respect to Plaintiffs' claims of

25  direct copyright infringement by K2 Inc. and violation of the Lanham Act by K2 Inc. and K2

26  Corp.

ORDER  34–

1    For the reasons stated above, the Court hereby GRANTS Plaintiffs' motion for partial
2  summary judgment, docket no. 65, on the direct copyright infringement claim based on K2
3  Corp.'s online display of Plaintiffs' images, the contributory copyright infringement claims
4  based on Dealer Advertisements, subsidiary use and Media Use of Plaintiffs' images, the
5  breach of contract claim based on K2 Corp.'s display of Plaintiffs' images without the photo
6  credit required by the 2000 and 2001 Agreement,  K2 Corp.'s distribution of Plaintiffs'
7  images for third-party use, and K2 Corp.'s failure to return all of Plaintiffs' original slides,
8  and the conversion claim based on K2 Corp.'s failure to return all of the Plaintiffs' original
9  slides and DENIES Plaintiffs' motion for partial summary judgment as to the precise number
10 of original slides missing for purposes of the breach of contract and conversion claims.

11    DATED this 30th day of September, 2003.

12

13                                    /s/ Thomas S. Zilly

14                                    _____

15                                    THOMAS S. ZILLY
                                      United States District Judge
16

17

18

19

20

21

22

23

24

25

26

ORDER  35–