1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
7                                  AT SEATTLE

8

9    CHASE JARVIS, et al.,

10                          Plaintiffs,              No.  C03-1265Z

11   v.

                                                     ORDER
12   K2 INC., a Delaware Corporation, and K-2
     CORPORATION, an Indiana Corporation
13   d/b/a K2 Sports,

14                          Defendants.

15          THIS MATTER comes before the Court on motion brought by plaintiffs Chase Jarvis

16   and Chase Jarvis, Inc. ("Jarvis") for an award of additional damages.  Having reviewed all

17   papers filed in support of and in opposition to said motion, including the supplemental briefs

18   and materials filed at the direction of the Court, _see_ Minute Order (docket no. 206), as well

19   as the trial exhibits resubmitted by both parties, the Court does hereby ORDER:

20   (1)    Jarvis's motion, docket no. 195, is GRANTED IN PART and DENIED IN PART;

21   (2)    Jarvis's request for statutory damages and attorney's fees is DENIED;

22   (3)    Jarvis is AWARDED actual damages in the amount of $2,766.00; and

23   (4)    The Clerk is directed to ENTER supplemental judgment consistent with this Order

24          and to send a copy of this Order to all counsel of record.

25

26

ORDER  - 1

**Background**

Following a bench trial in this matter, the Court entered Findings of Fact and Conclusions of Law ("Findings and Conclusions"), docket no. 164, awarding judgment in Jarvis's favor in the amount of $253,181.17, plus taxable costs.  *See* Judgment (docket no. 168).  The United States Court of Appeals for the Ninth Circuit affirmed the judgment in substantial part.  *Jarvis v. K2 Inc.*, 486 F.3d 526 (9th Cir. 2007).  The matter was remanded, however, on the issues of whether four advertisements created by defendant K2 Corporation ("K2"), which incorporated Jarvis's photographic images, constituted either nonwillful or willful infringements and whether Jarvis was entitled to actual or statutory damages.  *Id.* at 533, 538.  Jarvis now asks the Court for statutory damages in the amount of $150,000 as to each of ten (10) infringements,[1] actual damages in the amount of $461 as to each of eleven (11) other infringements, interest from June 9, 2003, and attorney's fees in the amount of $248,738.

Jarvis provided photographs to K2 under oral agreements, as well as two written agreements.  The first written agreement was dated October 6, 2000 ("2000 Agreement"). Tr. Exh. 2.  It granted K2 a non-exclusive license to use images transmitted thereunder in its print advertisements and on its web site for one year from the date of delivery.  *Id.* at § II.C. The second agreement was dated December 13, 2001 ("2001 Agreement").  Tr. Exh. 4.  It granted K2 a similar license, which expired after the 2002-2003 ski season, ending in May 2003.  *Id.* at § II.C.i.

K2 used various photographs provided by Jarvis, as well as other artists, to create collages that appeared in print advertisements.  Findings and Conclusions, Finding of Fact No. 60.  The print advertisements were later uploaded to K2's Seth Pistol and Factory Team

---

[1] Jarvis originally sought statutory damages for thirteen (13) infringements, but now agrees with K2 that only ten (10) different allegedly registered images were employed in the collage advertisements at issue; three images were each used twice.  Reply at 10 (docket no. 203); Response at 14 (docket no. 201).

1   web sites.  *Id.*  After the bench trial in this matter, the Court ruled that the collage

2   advertisements constituted collective works, which K2 had a right to reproduce and distribute

3   even after the licenses granted by Jarvis expired, and that K2 did not infringe Jarvis's

4   copyrights when it posted the collages on its web sites.  Findings and Conclusions,

5   Conclusions of Law Nos. 14 & 15.  On appeal, however, the Ninth Circuit concluded that the

6   collage advertisements were derivative works in which K2 was "undisputably the owner of a

7   copyright."  486 F.3d at 532 & n.6.  The collages were derivative works because K2 had

8   subjected Jarvis's photographs to alteration, fusing them "with other images and artistic

9   elements into new works."  *Id.* at 532.  As a result, K2 did not have the reproduction and

10  distribution privileges associated with collective works.  *Id.* at 530-31.  The Ninth Circuit

11  remanded for this Court to determine whether and to what extent Jarvis is entitled to

12  additional damages in connection with the Seth Pistol and Factory Team advertisements.  *Id.*

13  at 533.

14         The four collages created by K2 have been designated by initials and numbers as

15  "SP5," "SP6," "FT10," and "FT11"; SP stands for Seth Pistol and FT stands for Factory

16  Team.  SP5 contains six images derived from Jarvis's photographs.  *See* Tr. Exh. 250.  SP6

17  incorporates three altered versions of Jarvis's photographs, two of which are the same as

18  those used to formulate SP5.  *See id.*  FT10 includes seven, and FT11 contains eight, color

19  images that are based on Jarvis's black-and-white[2] photographs; one of the photographs was

20  used in both FT10 and FT11.  *See id.*  For ease of reference, Jarvis has sequentially

21  numbered the twenty-four images at issue, with 1 through 6 corresponding to SP5, 7 through

22  9 referring to images in SP6, 10 through 16 being found in FT10, and 17 through 24

23  appearing in FT11.  *See* Apps. A & B to Plaintiffs' Motion (docket no. 195).  The two

24  images that are duplicated in SP5 and SP6 bear the numbers 4 and 8, and 6 and 9,

25

26         _____

         [2] The parties agree that Jarvis's original "Factory Team" photographs were taken with black and
white film.  Supp. Memorandum at 15 (docket no. 207); Supp. Response at 7 (docket no. 209).

ORDER  - 3

1   respectively, while the image used in both FT10 and FT11 has been assigned the numbers 16

2   and 24.  *See id.*  Jarvis contends that, on May 19, 2003, before K2's license to use his

3   photographs expired, he registered a copyright as to three of the six images in SP5 (including

4   the two also appearing in SP6) and all seven images in FT10 (including the one duplicated in

5   FT11) and that, as to these allegedly registered materials, he is entitled to statutory damages

6   and attorney's fees.  With regard to the remaining eleven images, Jarvis seeks only actual

7   damages.

8   **Discussion**

9          **A.      Actual Versus Statutory Damages**

10         The Copyright Act provides as remedies for infringement either actual or statutory

11  damages.  17 U.S.C. § 504.  Statutory damages may be fixed in the range between $750 and

12  $30,000 per work, or at a minimum of $200 in the case of "innocent" infringement, or at a

13  maximum of $150,000 if the infringement was committed willfully.  *Id.*  No award of

14  statutory damages or of attorney's fees can be made, however, for infringement of a work

15  "commenced before the effective date of its registration."  17 U.S.C. § 412; *see also Mason*

16  *v. Montgomery Data, Inc.*, 967 F.2d 135, 144 (5th Cir. 1992) ("a plaintiff may not recover an

17  award of statutory damages and attorney's fees for infringements that commenced after

18  registration if the same defendant commenced an infringement of the same work prior to

19  registration").

20         **1.      Infringement Commencement Date**

21         In the Findings and Conclusions entered in April 2005, the Court indicated that "[t]he

22  use of the images [in SP5, SP6, FT10, and FT11] was governed by the 2001 Agreement."

23  Finding of Fact No. 60 (docket no. 164).  This finding now has significance because the

24  license granted by the 2001 Agreement did not expire (and thus, Jarvis argues, the

25  infringement could not have commenced) until after Jarvis allegedly registered the ten

26  images at issue.  The parties, however, agree that the Findings and Conclusions are

1   erroneous, at least with respect to the photographs used for SP5 and SP6.  Supp.

2   Memorandum at 19-20 (docket no. 207); Supp. Response at 1 (docket no. 209).

3   Nevertheless, Jarvis asserts that the law-of-the-case doctrine prevents the Court from

4   reconsidering its earlier ruling.  K2 responds that the law-of-the-case doctrine does not apply

5   to factual findings, but even if it did, modification of the finding to comport with the

6   evidence at trial is necessary here to avoid manifest injustice.

7        The law-of-the-case doctrine "is a judicial invention designed to aid in the efficient

8   operation of court affairs."  _Herrington v. County of Sonoma_, 12 F.3d 901, 904 (9th Cir.

9   1993).  Under the doctrine, a court is generally precluded from reconsidering an issue

10  previously decided by the same court or by a higher court in the same case.  _Id._  The

11  doctrine, however, "has long been held not to require the trial court to adhere to its own

12  previous rulings if they have not been adopted, explicitly or implicitly, by the appellate

13  court's judgment."  _Exxon Corp. v. United States_, 931 F.2d 874, 877 (Fed. Cir. 1991) (citing

14  _Quern v. Jordan_, 440 U.S. 332, 347 n.18 (1979)).  In broad terms, the law-of-the-case

15  doctrine requires "respect for what the higher court decided, not for what it did not decide."

16  _Snow-Erlin v. United States_, 470 F.3d 804, 807 (9th Cir. 2006).

17       A corollary to the law-of-the-case doctrine is the rule of mandate, which requires a

18  lower court on remand to implement both the letter and the spirit of the appellate court's

19  mandate.  _Firth v. United States_, 554 F.2d 990, 993-94 & n.3 (9th Cir. 1977); _see also Tollett_

20  _v. City of Kemah_, 285 F.3d 357, 364 (5th Cir. 2002).  Pursuant to this rule, the mandate "is

21  controlling as to all matters within its compass," _Firth_, 554 F.2d at 993, and the court on

22  remand must implement the explicit directives of the appellate court, _Tollett_, 285 F.3d at

23  364.  The rule of mandate, however, "allows a lower court to decide anything not foreclosed

24  by the mandate."  _Herrington_, 12 F.3d at 904.

25       Here, the Ninth Circuit remanded for this Court to "determine which of the 24 images

26  in the collage ads Jarvis registered and when he did so."  486 F.3d at 533.  The mandate

ORDER  - 5

1   further required this Court to determine "which of the images were registered before their

2   infringement commenced," and "whether K2 willfully infringed any of the images whose

3   infringement began after their registration." *Id.*  In framing its mandate, the Ninth Circuit

4   left open the question of when the infringements began, and it made no substantive rulings

5   concerning which contracts applied to which photographs.  Indeed, on appeal, Jarvis asserted

6   that, contrary to this Court's factual findings, "[t]he 'Factory Team' images in FT10 and

7   FT11 are governed by the 1999 oral agreement," which expired in May 2001, and that "SP5

8   and SP6 are governed by the 2000 Arrangement," which expired in October 2001.  Opening

9   Brief of Appellants at 34-35 & n.14, Exh. 1 to McBrayer Decl. (docket no. 202).  The Ninth

10  Circuit, however, in deciding that the collages constituted derivative, and not collective,

11  works, did not evaluate whether Jarvis's representations on appeal reflected a more accurate

12  picture of the underlying events.  Thus, the Court concludes that neither the law-of-the-case

13  doctrine nor the rule of mandate inhibits reconsideration regarding which agreement applied

14  to the images at issue.

15      Based on a re-examination of the evidence adduced at trial, the Court now finds that

16  the licenses for the images used in SP5 and SP6 expired, at the latest, in October 2001.  At

17  trial, Jarvis indicated that SP5 and SP6 incorporated images licensed until October 31, 2001.

18  Tr. Exh. 249 at Tab E.  Jarvis, however, also represented that the photographs included in

19  SP5 and SP6 were subject to the 2001 Agreement, which undisputedly terminated in May

20  2003, and not October 2001.  *Id.*  Thus, the information Jarvis provided to this Court

21  concerning SP5 and SP6 was internally inconsistent, causing confusion and contributing to

22  the error in the Court's factual finding.  Jarvis now clarifies that the photographs contained

23  in SP5 and SP6 were delivered to K2 on October 31, 2000, pursuant to the 2000 Agreement,

24  and the licenses associated therewith expired one year later, on October 31, 2001.  Supp.

25  Memorandum at 20 (docket no. 207).  The evidence presented at trial corroborates Jarvis's

26  current version of events, and the Court hereby modifies its findings of fact accordingly.  *See*

1    Tr. Exh. 249 at Tab E; _see also_ Tr. Exh. 11; Delivery Memoranda Nos. 284 & 286A

2    contained in Tr. Exh. 223 at Second Tab D.  Thus, with regard to SP5 and SP6, the Court

3    finds and concludes that any infringement commenced at the end of October 2001, well

4    before Jarvis claims to have registered the images at issue.[3]  Jarvis is therefore not entitled to

5    statutory damages or attorney's fees in connection with those two collages.[4]

6        As to FT10 and FT11, K2 argues that Jarvis should be judicially estopped from

7    denying that the licenses at issue expired, at the latest, sometime in 2001.  On appeal, Jarvis

8    informed the Ninth Circuit that the photographs incorporated in FT10 and FT11 were

9    provided to K2 under an oral agreement reached in 1999, pursuant to which licenses were

10   granted through May 2001.  Opening Brief of Appellants at 34-35 & n.14, Exh. 1 to

11   McBrayer Decl. (docket no. 202).  This representation is consistent with Chase Jarvis's

12   testimony at trial.  _See_ Tr. Transcript at 180:5-11, Exh. 2 to McBrayer Decl. (indicating that

13

14       [3] The Findings of Fact and Conclusions of Law (docket no. 164) are hereby modified as follows.
15   In Finding of Fact No. 60, on page 15 at line 5, the sentence "The use of the images was governed by the
     2001 Agreement." is revised to read "The use of the images appearing in SP5 and SP6 was governed by
16   the 2000 Agreement, and the licenses associated therewith expired on October 31, 2001; the use of the
     images appearing in FT10 and FT11 was governed by the 2001 Agreement."

17       [4] Jarvis also contends that the collage advertisements were not posted to the Factory Team and
18   Seth Pistol web sites (and that infringement therefore did not commence) until after the images at issue
     were registered in May 2003.  The Court is persuaded otherwise.  At trial, K2's Internet Services
19   Manager, Alison Feary, who is responsible for maintaining and updating K2's web sites, testified that the
     FT10 and FT11 collages were posted on the Factory Team web site from September 2002 to September
20   2003, and that the SP5 and SP6 collages were posted on the Seth Pistol web site in October or November
     of 2002.  Tr. Transcript at 102:2-3, 102:15-16, 108:24-109:8, 110:8-24, Exh. 1 to Neely Supp. Decl.
21   (docket no. 204).  Although Jarvis attempts to cast doubt on the accuracy or precision of Ms. Feary's
     testimony, the Court concludes that Ms. Feary's testimony was sufficiently specific and unequivocal to
22   warrant a finding that the collages were posted on the respective web sites in the fall of 2002, well before
     Jarvis obtained the related registration certificates.  During examination by Jarvis's counsel, Ms. Feary
23   indicated that the K2 web sites are updated on an annual basis, that the Factory Team site displayed FT10
     and FT11, along with nine other images contained in Trial Exhibit 249 at Tab C, from September 2002
24   to September 2003, and that the Seth Pistol site began showing SP5 and SP6, along with five other
     images contained in Trial Exhibit 249 at Tab E, in October or November 2002.  Tr. Transcript at 107:11-
25   12, 108:24-109:8, 110:8-24, Exh. 1 to Neely Supp. Decl.  Given the infrequency of changes to these web
     sites and Ms. Feary's candid acknowledgments when she did not know the answers to questions, the
26   Court has no reason to doubt the veracity of Ms. Feary's statements.  Moreover, to the extent that
     portions of Trial Exhibit 249 at Tabs C and E were posted on the respective web sites at different times,
     Jarvis had opportunity to, but did not, explore that issue at trial.

ORDER - 7

1   Delivery Memorandum No. 241, dated May 5, 2000, corresponded to 349 slides from the

2   "Factory Team shoot"); *see also* Tr. Exh. 11; Tr. Exh. 223 at Second Tab D (describing

3   delivered images as "K2 Factory tour, personnel, staff, facilities, athlete lifestyle").  Jarvis

4   now confesses that his representations to the Ninth Circuit were based on confusion for

5   which "no good explanation" exists.  Supp. Memorandum at 19 n.9 (docket no. 207).  Jarvis

6   asserts that he and/or his attorneys mistook the "Factory Tour" photographs delivered in May

7   2000 under the 1999 oral agreement for the "Factory Team" images delivered in April 2002

8   under the 2001 Agreement.  *Id.* (citing Delivery Memorandum No. 411 contained in Tr.

9   Exh. 223 at Second Tab D (describing images as "K2 black and white team stuff")).  With

10  regard to this misstatement, Jarvis contends that judicial estoppel does not apply because the

11  Ninth Circuit ignored Jarvis's position on appeal.

12      With reluctance, the Court must agree with Jarvis.  Judicial estoppel might be

13  appropriate when:  (i) a party's later position is "clearly inconsistent" with its earlier one;

14  (ii) judicial acceptance of the later inconsistent position would cast doubt on a prior

15  proceeding in which the party achieved success; or (iii) the party asserting the inconsistent

16  position would derive an unfair advantage or impose an unfair detriment on the other party.

17  *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007).  These

18  elements are only factors and not all of them must be satisfied.  *See id.*  Based on these

19  factors, however, the Court concludes that Jarvis cannot be precluded from disavowing the

20  representations he made to the Ninth Circuit.  An assessment of which contract governed the

21  images at issue was not a prerequisite to either this Court's previous ruling or the Ninth

22  Circuit's holding concerning the nature (collective or derivative) of the collage

23  advertisements.  Thus, although the Court does not condone the strategic shifting of what

24  should be the immutable characteristics of the case, the Court is not inclined to bind Jarvis to

25  factual statements upon which no decision-maker has yet relied.  Thus, as to FT10 and FT11,

26

1  the Court will not disturb its earlier finding that the photographs used therein were provided

2  pursuant to the 2001 Agreement, which expired in May 2003.[5]

3       **2.  Registration of Images Used in FT10 and FT11**
        (Certificate of Registration No. VA 1-201-292)

4

5       Having found that the licenses for images used in FT10 and FT11 expired after Jarvis

6  obtained certain certificates of copyright registration in May 2003, the Court must assess the

7  validity of the registration at issue, namely Registration No. VA 1-201-292.  To register a

8  copyright, a person must be the owner of the copyright or of an exclusive right in the work.

9  17 U.S.C. § 408.  Registration is accomplished by delivering a deposit, generally consisting

10 of at least one complete copy of the work, along with an application and the requisite fee.

11 _Id._  Although registration is not a condition of copyright protection, registration is a

12 prerequisite to an infringement action.  17 U.S.C. §§ 408 & 411.

13      Here, in connection with Registration No. VA 1-201-292, Jarvis did not deposit

14 copies of his original photographs, but rather copies of K2's derivative images.  _See_

15 Tr. Exh. 6 (reproduced in Exh. 5 to Neely Decl. (docket no. 197)).  Although Jarvis did

16 submit to the Copyright Office copies of some of his original photographs (in the form of

17 contact sheets made from negatives and photocopies of slides compiled onto a compact disc),

18 he did not do so until September 8, 2004.  Tr. Exh. 230 (reproduced in Exhs. 6 & 6A to

19 Neely Decl.).  Thus, the question before the Court is whether, by depositing with the

20

21      [5] K2 argues in the alternative that infringement took place before registration because alteration
of Jarvis's images violated the terms of the license.  The Court does not find K2's contention persuasive.

22 Both written agreements allow K2 to "publish images in . . . print advertisements, . . . and electronically
for the web."  Tr. Exhs. 2 & 4.  Images are defined as "all viewable renditions furnished by Chase Jarvis

23 hereunder."  _Id._  The contracts are, at best, ambiguous with regard to whether K2 was permitted to alter
Jarvis's photographs.  Presumably, some revisions of the images (_e.g._, cropping, resizing) were within

24 the parties' contemplation.  K2, however, has not provided the extrinsic evidence necessary to determine
the intent of the parties.  _See_ _Berg v. Hudesman_, 115 Wn.2d 657, 801 P.2d 222 (1990).  Moreover,

25 because Jarvis was the drafter of the agreements, absent extrinsic evidence to the contrary, the ambiguity
at issue must be resolved in K2's favor, meaning against a conclusion that K2 breached the contract by

26 changing the images at issue.  _See id._ at 677 (recognizing that ambiguous language may be construed
against the drafter); _see also_ _Lynott v. Nat'l Union Fire Ins. Co._, 123 Wn.2d 678, 690, 871 P.2d 146
(1994).

ORDER  - 9

1    Copyright Office only the derivative images created by K2, Jarvis validly registered a

2    copyright prior to infringement.

3        In attempting to defend the validity of Registration No. VA 1-201-292, Jarvis argues

4    that a regulation outlining acceptable forms of deposits for group registrations of

5    photographs authorized him to submit K2's derivative works.  The regulation Jarvis cites

6    provides that, for group registration of photographs, photographs must be deposited in one of

7    the enumerated formats, which include "[a] format in which the photograph has been

8    published (e.g., clippings from newspapers or magazines)" or "a photocopy of the

9    photograph in a format in which it has been published."  37 C.F.R. § 202.20(c)(xx)(E) & (F).

10   Jarvis contends that the use of the term "format" instead of the word "copy," which often

11   appears in regulations governing other types of works, allows for a broader range of deposits

12   with respect to photographs.  Jarvis further asserts that the color photocopies he deposited of

13   the collages developed by K2 constituted the formats in which the images had been

14   published and were therefore an acceptable submission to the Copyright Office.  Jarvis's

15   arguments lack merit because they fail to acknowledge the full significance of the Ninth

16   Circuit's decision in this case.

17       The Ninth Circuit held that K2 (not Jarvis) was the owner of copyrights in the

18   derivative works.  486 F.3d at 532 n.6 ("K2 is undisputably the owner of a copyright in the

19   collage ads, which were creative works derived from copyrightable underlying material").  In

20   light of the Ninth Circuit's decision, this Court must conclude that Jarvis's May 2003

21   deposits were improper.  Although the collages were a format in which the images contained

22   therein were published, the images themselves were K2's derivative works, and only K2 was

23   permitted to claim ownership or exclusive rights in the collages or any portions thereof.

24   Jarvis had no copyrights in K2's derivative images and was not entitled to use those works as

25   deposits to obtain a certificate of registration.

26

1    In asking this Court to parse the individual images from the collages as a whole, Jarvis

2    proposes for the Court to ignore both the letter and the spirit of the Ninth Circuit's opinion.

3    The Ninth Circuit specifically rejected the notion that K2 had merely collected or assembled

4    together the contributions of various artists, including Chase Jarvis, and instead concluded

5    that K2 had subjected Jarvis's photographs to the types of recasting, transforming, adapting,

6    and modifying "that define derivative works."  486 F.3d at 532.  Jarvis's suggestion that each

7    image within each collage remained an independent, original work in which he continued to

8    have the right of authorship completely disregards the Ninth Circuit's holding; had the Ninth

9    Circuit intended to treat the advertisements as dissectable in such manner, it would have

10   affirmed, rather than reversed, this Court's conclusion that the collages constitute collective

11   works.[6]  The Court therefore concludes that Registration No. VA 1-201-292 is not valid with

12   respect to FT10 and FT11, that infringement commenced prior to any registration, and that,

13   with respect to FT10 and FT11, Jarvis is not entitled to statutory damages or attorney's fees.

### B.    Calculation of Actual Damages

15   Because Jarvis is not entitled to statutory damages, he can recover only actual

16   damages, which have already been established as $461 per image, Findings and Conclusions,

17   Finding of Fact No. 69 (docket no. 164).  The Court, however, must now assess whether

18   Jarvis in fact registered his original photographs, which is a prerequisite to this Court's

19   jurisdiction.  _See_ 17 U.S.C. § 411.  Based on Jarvis's supplemental materials and the Court's

20   review of the record, the Court finds that only six of the images at issue were validly

---

[6] The Court notes that, if the collages were deemed collective works, Jarvis's deposit of the collages would have been appropriate to claim a copyright in the contributions thereto.  _See_ 17 U.S.C. § 408(b)(4).  If the collages were treated as collective works, however, Jarvis would not be entitled to any damages whatsoever.  _See_ 17 U.S.C. § 201(c).  Thus, the same result (namely no statutory damages or attorney's fees) is reached regardless whether the collages are deemed collective or derivative works.  Moreover, in light of the divergent rulings in this case, even if the Court were to conclude that the May 2003 registration was adequate, the Court would not find that K2's infringement was in any respect willful, but rather would have ruled that K2 "had no reason to believe that [its] acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2).  In such event, Jarvis's statutory damages would have been limited to $200.  _See id._

registered.  In September 2003, Jarvis obtained Registration No. VA 1-208-233 and

Registration No. VA 1-208-232, which related to 14 photographs and 6 photographs,

respectively.  *See* Tr. Exh. 5 at JAR 001847-001860; Tr. Exh. 6 at JAR 001867-001873.  In

September 2004, over fifteen months after the final license to K2 had expired, Jarvis

obtained Registration No. VA 1-272-215 and Registration No. VA 1-272-214, which each

related to over one thousand photographs, copies of which were compiled onto one compact

disc per registration.  *See* Tr. Exh. 230 at JAR 001874 - 001879 (reproduced in Exhs. 6 & 6A

to Neely Decl. (docket no. 197)).  Included on the compact disc for Registration No. VA 1-

272-215 were contact sheets made from negatives for six of the images associated with FT10

and FT11.  *See* Exh. 6A to Neely Decl. at p. 137, frame 15 (corresponding to FT10, No. 10);

at p. 138, frame 19 (corresponding to FT10, No. 15); at p. 136, frame 6 (corresponding to

FT10, No. 16 & FT11, No. 24); at p. 134, frame 27 (corresponding to FT11, No. 17); at

p. 139, frame 5 (corresponding to FT11, No. 20); at p. 139, frame 29 (corresponding to

FT11, No. 23); *see also* Exh. B to Neely Supp. Decl. (docket no. 208).  With regard to these

six photographs, the Court finds that Jarvis validly registered a copyright and is entitled to

actual damages.[7]  As to the remaining images, Jarvis has failed to identify in the record any

evidence of a valid registration; the deposits for the other fifteen images at issue were K2's

derivative works, either from the collages or from K2's web sites, and were not appropriate

---

[7] With respect to the unit of measure for actual damages, *i.e.*, per infringement, per image, or per collage, Jarvis has conceded that damages should be based on the number of works infringed, not the number of infringements.  *See Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143-44 (5th Cir. 1992). K2 asserts that, because the images were incorporated into a derivative work, the Court should award damages only for each of the infringing collages.  K2's argument is not reasonable.  Under K2's theory, an infringer could compile an entire book of edited photographs, without the copyright owner's permission, and call it a derivative work subject to only one award of damages; the infringer would assume the same risk regardless of whether 100 photographs or only one photograph was improperly used.  Such result is contrary to the policies underlying the Copyright Act.  *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799 (9th Cir. 2003) (Copyright Act "seeks to promote the progress of science and art by protecting artistic and scientific works while encouraging the development and evolution of new works").  Thus, the Court holds that Jarvis is entitled to an award of actual damages in the amount of $461 for each work that K2 infringed and that was properly registered.

1   submissions for Jarvis's copyright applications.[8]  _See_ Exh. B to Neely Supp. Decl. (docket

2   no. 208).  Thus, as to image numbers 1, 2, 3, 4/8, 5, 6/9, 7, 11, 12, 13, 14, 18, 19, 21, and 22,

3   the Court concludes that it has no jurisdiction with respect to Jarvis's claim of copyright

4   infringement.[9]  Jarvis is awarded actual damages in the amount of $2,766.00.  A

5   supplemental judgment shall be entered forthwith.

6          IT IS SO ORDERED.

7          DATED this 5th day of March, 2008.

8

9                                          _____

10                                         Thomas S. Zilly
                                           United States District Judge

11

12

13

14

15

16

17

18
_____

19          [8] The Court notes that, at least with respect to two of the SP5 images, in addition to being K2's
     derivative works, the deposits do not even match the pictures in the collage.  Image number 3 in SP5 is
20   a cropped visual of skis, on edge, cutting to the right, A1 in App. A to Plaintiff's Motion (docket
     no. 195), while the deposit associated therewith is a highly stylized image of a skier using K2 skis,
21   beneath a caption that reads in part "HIGH PERFORMANCE SERIES," JAR 001215, Exh. 4 to Neely Decl.
     (docket no. 197).  The deposit also contains a vertical line, crossing through the skier, which gives the
22   image the feel of a magazine insert; the collage image does not include such vertical line.  Likewise, image
     number 4 in SP5 is rectangular in shape, depicting on the left side a person's face looking to the right,
23   toward an unrecognizable object reflecting a camera flash, A1 in App. A to Plaintiff's Motion, while the
     related deposit is circular in shape, showing only the face, JAR 001214, Exh. 4 to Neely Decl.
24

25          [9] Jarvis appears to contend that he did not properly register his original works because K2 lost
     some of his original slides.  _See_ Supp. Reply at 3 (docket no. 211).  Jarvis, however, has provided no
26   evidence that the images associated with the four collages were among the 376 slides never returned by
     K2.  _See_ Finding of Fact No. 50 (docket no. 164).  Moreover, Jarvis has already been adequately
     compensated for the missing slides.  _Id._

ORDER - 13